458

RICHARD W. BORGMANN and RALPH F. SHOOK, d/b/a WESTERN REALTY, Plaintiffs and Respondents, v. JOHN L. DIEHL, PATRICIA B. DIEHL, ROBERT L. MILLER and KATHERINE J. MILLER, Defendants and Appellants.

No. 11747.
Decided Aug. 3, 1970.
473 P.2d 529.

Erickson & Erickson, Helena, Leif Erickson, argued, Helena, for appellants.

Harris, Jackson & Bennett, Helena, David L. Jackson, argued, Helena, Andrew J. Utick argued, Helena, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

An appeal by defendants John L. Diehl and Patricia B. Diehl, husband and wife, from a directed verdict granted plaintiffs Richard W. Borgmann and Ralph F. Shook d/b/a Western Realty, in an action for recovery of real estate sales commission. The case was tried before a jury in the first judicial district, Lewis and Clark County, Hon. Victor H. Fall presiding. At the close of the evidence both parties made motions for directed verdicts. The trial court granted plaintiffs' motion against the Diehls and dismissed defendants Robert L. Miller and Katharine J. Miller, husband and wife.

Borgmann, a real estate broker, was asked by the Diehls to sell a home for them. On March 28, 1967 Mrs. Diehl entered into a multiple listing agreement with Western Realty whereby Western Realty was given the exclusive right to sell the Diehl property. This exclusive right to sell the property was for a period of 90 days beginning as of March 28. The provision of the multiple listing employment contract in controversy here states as follows:

"In the event that you, or any members of the Multiple Listing Service cooperating with you, shall find a buyer ready and willing to enter into a deal for said price and terms, or at such other price and terms as I may accept, or that I am placed in contact with a buyer to or through whom at any time within 90 days after the termination of said employment I may sell

or convey said property, I hereby agree to pay you in cash for your services a commission equal in amount to 6% of said selling price."

It is of import to note that two 90 day periods were involved. The first ran from March 28, 1967 to June 28, 1967, during this period Western Realty had an exclusive right to sell the Diehl property. The second ran from June 28 to September 28, 1967. During the second period of 90 days Western Realty no longer had the exclusive right to sell the property but had the right to collect a commission if the sellers sold the property to anyone to whom they were introduced by Western Realty during the first period.

Shook, a salesman for Western Realty, showed Mr. and Mrs. Miller the property at their request. On June 13, 1967 the Millers signed an agreement to purchase the property for $20,000. The Diehls signed the agreement the next day. On June 15, 1967 the Millers contacted the Diehls and Western Realty informing them they could not go through with the purchase because they could not meet the down payment requirements. About 4 days later, Shook returned the Millers' earnest money after he was given permission to do so by the Diehls. Soon after June 15 Shook notified the multiple listing agency that the deal had not materialized and the property was still for sale. The testimony is not clear, but sometime after June 15 the Millers requested Western Realty to see if they could get a better deal but the Realty Company refused or at least did not carry the offer back to the Diehls.

On June 28, 1967, the termination date of the listing agreement, Shook called the Diehls and asked if Western Realty could relist the property. The Diehls refused because they intended to attempt to sell it themselves.

Sometime during the first week of July 1967, the Millers contacted the Diehls to inquire if the property had been sold. Since it had not, they made an offer and on July 12, 1967 an agreement was reached whereby the Diehls agreed to sell the prop-

erty to the Millers for $18,500. From the testimony it appears that either in the latter part of June or the first part of July the Millers applied for a Veterans Administration loan for the property in question.

On July 26 Shook again called the Diehls in a further attempt to relist the property but was informed by the Diehls that the property had been sold

On August 17, 1967 the Veterans Administration loan was approved with the provision that the water on the property had to pass Veterans Administration requirements. A deed transferring title to the property was signed by both the Millers and the Dihels on August 23, 1967.

In August 1967 the Diehls gave notice to the persons renting the home in question that it had been sold and they would have to move. On September 8 the water was given a clean bill of health by the Veterans Administration and by September 21 the check in the amount of the loan had been sent. The second 90 day period ended September 28, 1967. Three events occurred subsequent to that date: (1) the family renting the house moved on October 19; (2) on October 19 the check from the Veterans Administration was delivered to the Diehls and a deed was delivered to the Millers; (3) on October 20, 1967 Miller recorded the deed.

The appellants set forth the issues on appeal as: (1) Whether or not there was a sale or conveyance of the property within 90 days after the termination of the listing agreement, i. e. before September 28, 1967. (2) If there was a sale within 90 days, does the testimony show facts that would warrant a jury to find that plantiffs abandoned their rights under the listing agreement? (3) Did the trial court err in not granting defendants' motion for a directed verdict?

Here, we find that the controlling question is whether or not the trial court erred in directing the verdict in view of the fact situation. We find that it did.

462

Prior to the adoption of the new Rules of Civil Procedure, effective January 1, 1962, it was the law of this jurisdiction that when both parties moved for a directed verdict, in the absence of a request that the jury be required to determine any question of fact, there is a waiver of the right to trial by jury and the court was constituted a trier of all questions of law and fact. Glick v. Knoll, 136 Mont. 176, 346 P.2d 987.

With the adoption of the new Rules of Civil Procedure this changed. Rule 50 is controlling. It is as follows:

"(a) *When Made: Effect.* A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts A motion for a directed verdict shall state the specific grounds therefor.

"(b) *Reservation of Decision on Motion.* Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no ver-

dict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

"Motions provided by this subdivision shall be heard and determined within the times provided by Section 93-5606 of the 1947 Revised Codes of Montana in the case of motions for new trial. Amended by S.Ct. order Sept. 7, 1965, eff. Jan. 1, 1966."

Here there were factual issues for the jury to determine. 1. Was there an abandonment by the respondents when the Millers requested them to recontact the Diehls for a better deal? 2. What was the effect of the Millers applying for the Veterans loan in the latter part of June? 3. Was there a completed sale within the 90 days period? All of these questions should have been submitted to the jury.

At the time of the motions, each asking for a directed verdict, the trial judge remembered the old rule, but stated:

"I'm not at all certain that this is still the rule at all. The new rules are something that to me are sort of a mysterious land that—frankly, I just don't know about that"

A careful reading and consideration of Rule 50 would have provided the trial judge with a jagged peak of law that would have guided the trial to a safe and legal conclusion.

Judgment of the district court is reversed and a new trial ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DALY and HASWELL, concur.

MR. JUSTICE CASTLES, deeming himself disqualified, did not participate.