HARTT, APPELLANT, *v.* JAHN ET AL., RESPONDENTS.

(No. 4,260.)

(Submitted January 8, 1921. Decided February 14, 1921.)

[196 Pac. 153.]

*Foreclosure of Mortgages—Real Property—Vendor and Purchaser—Principal and Agent—Ostensible Agent—Statute of Frauds.*

Real Property—Vendor and Purchaser—Evidence Insufficient to Show That Party Making Sale was Agent of Owner.
  1. Plaintiff, owner of agricultural lands, entered into a contract with a corporation for their sale, under the terms of which it could sell portions thereof, subject to mortgage running to plaintiff, he to make conveyance upon fulfillment of certain conditions. The corporation defaulted and the contract was terminated. Thereafter G., its former agent, made a contract with plaintiff whereby the latter agreed to make conveyance to any purchaser G. might secure for portions of the land upon compliance with the terms and conditions under which the land had originally been sold to the corporation. G. thereupon contracted with defendant for the sale of 160 acres, G. agreeing to do

certain things, in the performance of which he failed. Defendant made partial payments and defaulted in the rest, because of G.'s failure to perform. Plaintiff (the owner) brought action to foreclose. Defendant set up his contract with G., and asked for a cancellation of his notes and mortgage, because of its breach. The court found that G. was plaintiff's agent in G.'s transactions with defendant and decreed cancellation as prayed. Evidence reviewed, and *held* that G. was neither the actual nor ostensible agent of plaintiff, and that plaintiff, not having assumed to fulfill G.'s obligations in his contract with defendant, could not be held responsible for G.'s failure to perform.

Same—Principal and Agent—Brokers—Contracts—Statute of Frauds.

2. Under sections 5017, subdivisions 5 and 6, and 5424, Revised Codes, any contract conferring upon an agent or broker authority to make a sale, or to contract to make a sale, of real estate must be in writing.

Agency—Ostensible Agent—Definition.

3. To constitute one an ostensible agent, the party sought to be held as principal must, by reason of some act or want of ordinary care on his part, have led the other party to believe he was his agent, even though not actually employed by him.

Real Property—Principal and Agent—Ostensible Agent—Evidence—Insufficiency.

4. *Held*, that the facts that plaintiff, in a letter to a bank, inclosed with the deed, notes and mortgage to be executed by defendant, the supplemental contract between G. and defendant, that it was delivered to him with the deed and that plaintiff did not thereafter repudiate the contract, did not, under the circumstances, amount to a holding out of G. as his agent so as to make it binding upon himself.

Same—Vendor and Purchaser—Nonliability of Vendor on Contract of Another.

5. The mere facts that the supplemental executory contract between G. and defendant was given as a part consideration for the purchase of the land from plaintiff, and that he received the purchase price, did not make the latter liable for nonperformance of its provisions, upon the theory that he who takes the benefits must assume the burdens as well.

*Appeals from District Court, Meagher County; John A. Matthews, Judge.*

ACTION by Dudley N. Hartt against Henry N. Jahn and wife. From a judgment for defendants and from an order denying a new trial, plaintiff appeals. Reversed, with directions.

---

2. On necessity that authority of agent to purchase or sell real property be in writing to enable him to recover compensation for his services, see notes in 13 Ann. Cas. 977; Ann. Cas. 1915A, 1133; 44 L. R. A. 601; 9 L. R. A. (n. s.) 933.

4. Ratification, as principal, of act of another representing himself to be agent, see note in 13 Ann. Cas. 279.

*Messrs. McIntire & Murphy,* for 'Appellant, submitted a brief; *Mr. H. G. McIntire* argued the cause orally.

*Messrs. Blackford & Huntoon,* for Respondents, submitted a brief; *Mr. Jas. A. Walsh,* of Counsel, argued the cause orally.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

Action was commenced by appellant for foreclosure of mortgage given by respondents as part of purchase price of the real estate covered by the mortgage; complaint being in the usual form of complaints in foreclosure actions.

Respondents admitted the allegations of the complaint except that there was anything due or payable upon the notes and mortgage and set up as an affirmative defense an executory collateral contract signed by one John H. Garrett with respondent Henry N. Jahn, the covenants of which were never fulfilled. Respondents also filed counterclaim, claiming damages by reason of the nonfulfillment of the collateral contract. The trial court found in favor of respondents and entered decree allowing nothing upon the counterclaim, but canceling the notes and mortgage and giving a money judgment to respondents, not upon the counterclaim, but as reimbursement for moneys paid by respondents in excess of the actual value of the land, as found by the court. The appeal is from the judgment and from the order overruling motion for a new trial.

From the undisputed facts in the case it appears that in [1] 1910 appellant was the owner of approximately 3,500 acres of land in Meagher county, and that on or about the third day of June, 1910, he entered into a contract for a sale of the land to Northern Land Colonization Company. In this contract it was provided that upon payment of the sum of $10,000 the company should have the privilege of selling portions of said land in small tracts to actual purchasers at stated

minimum and maximum prices, on condition that no sales should be made unless at least one-fourth of the minimum sale price for such parcel was paid therefor, and such cash payments be paid to appellant until the full sum of $20,000 should be received by him, and providing that all deferred payments should be secured by first mortgage on the premises on conditions mentioned in the contract. John H. Garrett, acting as agent of Northern Land Colonization Company, negotiated sales of several parcels of the land, including a sale of the real estate mentioned in the complaint to respondent Henry N. Jahn for $45 per acre. After negotiating the sale to respondent (by respondent always meaning respondent Henry N. Jahn), Northern Land Colonization Company defaulted on its contract, and the contract was terminated. Thereafter, and on or about the seventeenth day of September, 1910, Garrett entered into a contract with appellant wherein, among other things, is recited a termination of the contract with Northern Land Colonization Company and that under the privilege granted to vendee in that contract Garrett as agent of vendee, did, from time to time, enter into contracts for the sale of various parcels of land to divers persons, a description of which lands so agreed to be sold and the terms of sale, together with the names of the persons with whom contracts were made, were included in exhibit marked Exhibit A attached to the contract and made a part thereof. In this exhibit Garrett represented to appellant that he had sold 160 acres, being the land described in the complaint, to Henry Jahn, of Manila, Iowa, for the purchase price of $40 per acre net agent's commissions, or a total of $6,400, $1,600 of which was to be cash upon the execution and delivery of deed, and balance to be represented by eight promissory notes secured by first mortgage on the premises, maturing in pairs in two, three, four and five years, respectively, with interest at 6 per cent per annum, payable annually. In this contract between Hartt and Garrett it was further recited that "Whereas, it is desired that the contracts so entered into

as aforesaid by said John H. Garrett, as set forth in Exhibit A
hereof, shall be approved and carried out by the said Dudley
N. Hartt, and that deeds for said parcels shall be executed
and delivered to the prospective purchasers thereof.'' Follow-
ing the recitations of the contract, it is provided: ''Now,
therefore, in consideration of the premises, it is hereby under-
stood and agreed by and between the parties hereto as follows,
to wit: (1) That the said Dudley N. Hartt will sell and con-
vey by good and sufficient deeds containing the usual clause
of warranty, the said parcels set out in said Exhibit A hereof
to the respective persons therein mentioned and at the prices
and upon the terms and conditions respectively therein con-
tained, and upon the receipt of the purchase price therein
provided for and the notes and mortgages for the unpaid bal-
ances of purchase prices as in said exhibit set forth, will
deliver or cause to be delivered the said deeds to said pur-
chasers respectively.''

Thereafter, and in the latter part of November, 1910, appel-
lant mailed to First National Bank, Manila, Iowa, a deed of
the premises, together with blank notes and mortgage to be
signed by respondents, with directions to deliver the deed to
respondent upon execution of the notes and mortgage and the
payment of the sum of $1,520, which notes, mortgage, and
money were to be forwarded to appellant. The balance of
the payment, being $280, had been or was to be paid to
Garrett. The bank was represented in this matter by its
cashier, R. C. Jackson, who testified that the Garrett-Jahn
contract was included with the other inclosures of that letter.
This is denied by appellant, but the court expressly found that
it was so inclosed, and we will accept the court's finding on
that point.

The Garrett-Jahn contract was dated November 10, 1910,
and purports to be made between John H. Garrett, party of
the first part, and Henry Jahn, party of the second part, is
signed by them, and provides that, in consideration of the
party of the second part purchasing from D. N. Hartt, through

said party of the first part, the premises in question, the party of the first part covenants to clean out and repair a certain irrigation ditch and put it in such a state of repair that it will continuously and perpetually deliver water to the premises in sufficient quantities to properly and continuously irrigate the same during the irrigation seasons of each year. It further provided that, in consideration of the purchase of the land and of the annual rentals to be paid by Garrett to Jahn, the latter did thereby lease unto first party the premises for a period of five years. The contract also provided for the cultivation and seeding of the premises and for division of crops or money rentals during its term. Respondents executed the notes and mortgage, and same were returned to appellant, the deed being delivered to respondent. At same time the Garrett-Jahn contract was executed by Jahn and retained by him. The record does not disclose when this contract was signed by Garrett, but presumably it was before execution of it by Jahn. Thereafter respondent paid the notes which fell due on November 30, 1911, and November 30, 1912, the latter being paid March 22, 1913, without objection to appellant that the terms of the Garrett-Jahn contract had not been fulfilled. Respondent several times complained to Garrett that the contract had not been carried out and was assured by him that it would be all right, but at no time did respondent make any complaint to appellant until on or about April, 1914.

The specifications of error raise the question as to the sufficiency of the evidence to support the finding that Garrett was the agent of Hartt in making the sale to Jahn. It is contended by respondent that the foregoing facts establish the actual or ostensible agency of Garrett for appellant, and that, even though there was no such relationship between them, yet appellant expressly assumed the Garrett-Jahn contract by his agreement with Garrett above set forth. Respondent insists that appellant was bound by the covenants contained in the latter contract, and that, these covenants having never been fulfilled, there was a failure of consideration, whereby

respondents were entitled to cancellation of the notes and mortgage for which the action was brought and to damages as set forth in the counterclaim.

It is apparent that Garrett was not the agent of appellant at the time he made verbal agreement with respondent for the purchase of the premises, as he was at that time acting as actual agent for Northern Land Colonization Company, vendee under its contract with appellant. So far as the record discloses, Garrett was then entirely unknown to appellant in the matter. Appellant did not know anything of the proposed sale to respondent. He had merely entered into a sale contract with the company, and had not in any way authorized Garrett or anyone else to act as his agent for sale of the land. He did nothing to cause respondent or anyone else to believe that Garrett was his agent at that time. It is therefore impossible to find that Garrett was then either his actual or ostensible agent. Appellant, not being bound by any of the oral agreements entered into between Garrett and respondent, cannot then be held responsible for the fulfillment of the terms of the Garrett-Jahn agreement, unless he expressly assumed it and promised to fulfill the covenants thereof under the terms of his written contract with Garrett or his conduct was such as to clothe Garrett with ostensible authority to make the contract as his agent.

Is there anything in the Hartt-Garrett contract from which the conclusion can legitimately be drawn that appellant assumed the obligations of Garrett in the Garrett-Jahn contract? To satisfactorily answer this question, it is well to consider the situation existing at the time this contract was made. Appellant had entered into a contract with Northern Land Colonization Company for the sale of the premises, and Garrett had negotiated the sale to respondent in pursuance with the privilege given by that contract. It may be assumed that the terms of the sale to respondent were satisfactory, as they were at least as favorable to appellant as he would have been entitled to receive under the contract with the company. On

the contrary, Garrett had made complete arrangements for the sale, the terms had been fully agreed upon, respondent was expecting to receive his deed, and Garrett desired to make the profit of $800 on the deal, being the difference between the sale price on sale to respondent and the price from appellant to Garrett. In consideration of Jahn purchasing the premises through Garrett, whereby the latter would receive his profit, Garrett agreed with Jahn that he would take a lease of the premises for five years on terms that were attractive to Jahn, including the improvements on the place in the nature of ditch repairs. When these facts are considered, there is nothing strange in the recitation of the contract, wherein it is set forth that it was desired that the contracts negotiated by Garrett should be carried out, and that deeds should be executed and delivered to the prospective purchasers, and it is not strange that in the contract appellant in substance agreed to substitute Garrett for Northern Land Colonization Company, and that provision should be made whereby appellant should deed directly to the prospective purchasers.

It is to be noted, however, that the contract is in writing, and it is presumed to contain the entire agreement between the parties. Neither in this contract nor in the Exhibit A attached thereto is any mention made whatever of the supplemental contract between Garrett and respondent. Appellant merely promised Garrett that he would convey the premises in question to respondent upon receipt of the down payment and of the notes and mortgage for the unpaid balance of purchase price, as set forth in that exhibit. The contract cannot be construed to place upon either party any obligation not therein mentioned. Inasmuch as no reference whatever is made to the Garrett-Jahn contract, either directly or indirectly, whereby it can be assumed that appellant either knew of it or promised to fulfill its terms, it cannot be deemed to be a part of the contract. The Hartt-Garrett contract is no different in its essential features than an ordinary sale contract with privilege to vendee to negotiate and make sale of

parcels of land with obligation upon the vendor to make conveyance to such purchaser upon receiving certain consideration provided for in the contract. It is not an uncommon form of contract, and does not clothe the vendee either expressly or inferentially with any authority whatever to represent the vendor in such proposed sale. The vendee makes such sale on his own account with himself as principal and without any regard whatever to the vendor except in so far as the conditions of the contract with the vendor must be fulfilled in order to entitle the vendee or his prospective purchaser to receive a deed. In this view of the contract, which we deem to be the correct one, Garrett was not made an agent of appellant with authority to represent him in any manner whatever, but appellant merely promised to give the deeds to the prospective purchasers to whom Garrett had made sale on his own account, upon appellant receiving the consideration mentioned in the contract. Appellant did not assume to fulfill the obligations assumed by Garrett in his contract with Jahn, because there is nothing in appellant's contract with Garrett placing any such responsibility upon him.

It is urged that, in view of the facts that Hartt was the owner of the land, that the supplemental contract was inclosed in the letter from him to First National Bank of Manila, that the deed, blank notes and mortgage were all executed contemporaneously, and that the supplemental contract constituted a part of the consideration, that it was never repudiated by appellant until shortly before the commencement of this action, appellant is responsible to respondent on the theory that he had clothed Garrett with ostensible authority as his agent to enter into the contract with Jahn. It must be remembered that the subject matter is real estate, [2] and that any contract conferring upon an agent or broker the authority to make a sale or to contract to make sale of real estate must be in writing. (Rev. Codes, sec. 5017, subds. 5, 6; *Id.*, sec. 5424.) Respondent insists that there is a distinction between giving authority to an agent to *agree*

*to sell* and authority to *sell,* and that these Code sections do not apply to authority of an agent to contract to sell lands. He cites in support of that contention *Cobban* v. *Hecklen,* 27 Mont. 245, 70 Pac. 805. An examination of the facts upon which the decision in the cited case is based shows that the events involved in the decision transpired prior to the enactment of these Code sections. The case merely holds' that prior to the enactment of these sections such authority was not 're-quired to be in writing. As the statutes now read, any binding authority given to an agent 'to contract to sell land must be in writing. Inasmuch as the authority of the agent must be in writing, he can have no more authority than is vested in him by the writing.

In this case the Hartt-Garrett contract was recorded and appeared in the abstract which was submitted to respondent's attorney for examination at or about the time of the completion of the sale. There was at least constructive notice to respondent of the contents of the contract, and, therefore, of the relationship between appellant and Garrett. It may be doubted as to whether or not, under such circumstances, there could possibly exist any ostensible authority in Garrett to [3, 4] make the collateral agreement. If there was any ostensible authority, it must have been by reason of some act' of appellant or want of ordinary care on his part 'whereby respondent was led to believe that Garrett was appellant's agent, even though not actually employed by him. (Rev. Codes, secs. 5418, 5432.) We are unable to find that merely because appellant was owner of 'the land, that he inclosed the supplemental contract in his letter to the bank, that such contract was delivered to respondent at the time of the delivery of the deed, and that appellant did not thereafter in any way repudiate the contract, he thereby did anything or failed to do anything by reason of which respondent had any ground to believe that Garrett was appellant's agent. The supplemental contract itself was made in Garrett's name as principal, and it does not appear at any time that any representation of

any kind was made to respondent, even by Garrett himself, that this contract was made in behalf of appellant. There is nothing in the letter from appellant to the bank which indicated to respondent that appellant considered in any way that Garrett had made that contract in his behalf and that he (appellant) was, in fact, the principal therein. In fact, the attitude of respondent himself was such as to indicate that he did not at that time nor for a long time thereafter consider that the supplemental contract was made in behalf of appellant as principal. He accepted the contract made and signed by Garrett as principal. Afterward, when the covenants of this contract were not fulfilled according to their terms, respondent made complaint to Garrett, but never to appellant. These complaints were made to Garrett at a number of different times, and at no time in such complaints did respondent claim that the contract should be fulfilled by appellant. Moreover, respondent with knowledge of the fact that the covenants of the contract had not been fulfilled and without making any objection to appellant, paid the notes and interest thereon falling due for each of the two years following the completion of the sale. His attitude throughout, until April, 1914, was entirely inconsistent with any supposition on his part that Garrett had not been acting for himself, but for appellant, in the making of the supplemental contract.

It is urged also that, inasmuch as the Garrett-Jahn contract [5] was part of the consideration for the purchase of the land, and that appellant received the benefit of the purchase price, he must therefore assume the obligations of the contract upon the theory that he who takes the benefits must assume the burdens. It must be remembered that Garrett himself had an interest in the sale, which interest was sufficient to support any obligation assumed by him in the transaction. There were also benefits running to respondent, inasmuch as this contract in its essence is no more than a lease whereby, in consideration of the use of the premises, Garrett, as tenant, covenanted to do the ditch work mentioned in the

contract, make division of crops and pay money rentals as therein provided. Its terms were entirely executory. The consideration for the payment and notes and mortgage given by respondent to appellant was the land and the covenants of Garrett in his contract. The full consideration was complete as between appellant and respondent as soon as the deed and contract were delivered. If, therefore, there was any failure in the performance of the covenants of the contract, respondent's remedy was by action against him who assumed the obligation of performing the covenants. Merely because the contract was given as a part consideration for the purchase of the land, it does not follow that appellant was bound to fulfill its terms. In no sense were the obligations of the contract the obligations of appellant. Appellant not having assumed the performance of this supplemental contract in his contract with Garrett, not having given Garrett any actual authority to make such a contract in his behalf, and not in any way having given respondent any reason to believe that Garrett was acting as his agent in the making of such contract, respondent cannot complain because appellant did not carry out the contract. His remedy is an action against Garrett for his breach.

The judgment and order are reversed, with direction to enter decree of foreclosure as prayed for in the complaint.

*Reversed, with directions.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.