No. 12601

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

DONALD G. DUNLAP and THELMA DUNLAP,

Plaintiffs and Counter-Defendants
and Appellants,

-vs-

CHRIS NELSON and THERESE E. NELSON,

Defendants and Counter-Plaintiffs
and Respondents.

Appeal from:  District Court of the First Judicial District,
Honorable Gordon E. Bennett, Judge presiding.

Counsel of Record:

For Appellants:

Gough, Booth, Shanahan and Johnson, Helena, Montana
Cordell Johnson argued, Helena, Montana

For Respondents:

Keller, Reynolds and Drake, Helena, Montana
Paul F. Reynolds argued, Helena, Montana

Submitted:  May 20, 1974

Decided:  SEP 17 1974

Filed:  SEP 17 1974

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from an action in equity for rescission of a contract on grounds of failure of consideration and fraudulent inducement heard in the first judicial district by the Hon. Gordon R. Bennett. From a judgment denying rescission, the appellants bring this appeal.

Appellants, Donald G. Dunlap and Thelma Dunlap (hereinafter referred to as buyers) purchased from respondents, Chris Nelson and Therese E. Nelson (hereinafter referred to as sellers) in April of 1971, a marina facility located at Cave Bay on Canyon Ferry Lake near Helena, Montana. The facility is situated on property owned by the State of Montana and managed by the Montana Fish and Game Commission.

Buyers became aware that sellers were offering the marina facility for sale through an advertisement in the Los Angeles Times. Buyers were at that time living in Anaheim, California, where Dunlap was employed as a barber and his wife managed an apartment building.

Buyers met with sellers' son, Norman Nelson, in California to discuss the matter. Buyers later went to Norman Nelson's house in Pacific Palisades, California, where they met with Norman and sellers to discuss the sale.

Buyers, in late March 1971, inspected the marina facilities. Sellers offered the property for $125,000. Buyers responded with a counteroffer of $75,000, which was accepted and the parties on or about May 19, 1971, entered into a contract entitled "Escrow Agreement".

There are three areas of dispute in the facts as they concern the negotiations and later the action for rescission: (1) Back taxes on the marina property, (2) liability insurance on the property, and (3) the future leasehold from the Fish and

Game Commission.

There were back taxes owing on the marina property at the time of the purchase. Buyers contend that at the initial meeting between buyers and sellers that sellers represented to buyers that before the sellers could sell the property they would return to Montana and "straighten out the taxes". Sellers' son, Norman Nelson, denied any such representation and testified that it was his understanding that tax responsibility was that of a former marina owner, Louie Faas, and that sellers might possibly be responsible for them if Faas did not pay them. Buyers did not check the tax records in Lewis and Clark County to see if the taxes were paid before purchasing the marina. On September 24, 1971, five months after the sale was made, sellers brought a quiet title action in Lewis and Clark County and judgment was rendered in sellers' behalf which determined the back taxes on the marina property. These taxes were paid on December 3, 1971, by sellers.

It is buyers' contention that sellers represented to them that the property was covered by insurance, including liability insurance, and it would be possible for the buyers to take over the existing insurance until it was necessary to renew the policy. It was later discovered by the buyers that there was no liability insurance coverage on the property.

Sellers, however, testify that they have no recollection of any such conversation. Sellers' son, Norman, had no recollection of any discussions in reference to insurance, although it is possible that the subject was mentioned but not in detail. He testified that the first time he recalled any conversation in reference to insurance was in August, 1970, and that discussion took place between himself and his father only, that he first learned that there was no liability insurance in August, 1971.

Paragraph 10 of the escrow agreement provided that buyers were to secure for themselves adequate public liability and property damage insurance coverage. Paragraph 11 required the deposit of the insurance policy or policies required with the escrow papers. Paragraph 13 of the escrow agreement sets forth that failure of the buyers to maintain insurance is a basis for default. Buyers upon learning that there was no liability insurance sought to obtain a policy but claim that they were unable to do so. Thereafter buyers had a letter of rescission dated July 9, 1971, sent to sellers. July 22, 1971, sellers obtained a policy of insurance for personal liability for the marina facilities.

At the time of the sale, the marina property was under a ten-year lease from the Fish and Game Department, which ran until 1980. The sellers assured buyers that they could get a ten-year lease with a ten-year renewable option. Paragraph 30 of the escrow agreement provided:

> "It is also expressly provided and understood by and between the parties hereto that the sale of all of the property here involved by Sellers to Buyers is expressly conditioned on the granting of a ten-year lease or permit by the State of Montana to Buyers for the use and occupancy of said real property forming the site for use as a resort site. It is further agreed that if such lease or permit is not granted, that the buyers may, at their option, declare this agreement null and void and of no force and effect except that as to the down payment or $12,500.00 which has been made by Buyers to Sellers, as hereinabove set forth, an equitable portion thereof will be refunded by Sellers to Buyers, Sellers being permitted to retain so much thereof as will compensate them fairly and adequately for their loss of time, profits and inconvenience in the premises. It is further agreed that if the parties cannot decide upon the division of said down payment, they will submit the matters to arbitration, each party selecting an arbitrator and these two selecting a third. The decision of a majority of said arbitrators on said question shall be binding on the parties hereto."

Buyers were not granted a ten-year lease, but only a five-year lease by the Fish and Game Commission.

Buyers present the following four issues for review:

1. Whether buyers are entitled to rescind the contract for material failure of consideration?

2. Whether buyers are entitled to rescind contract, based on fraud in the inducement?

3. Whether district court erred in admitting evidence of insurance obtained after notice of rescission had been given?

4. What expenditures should properly be allowed in order to make buyers whole?

The buyers contend that because of the representation by the respondents concerning the matters of back taxes and liability insurance that they were fraudulently induced into the escrow agreement.

We defined fraud in Cowan v. Westland Realty Company, 162 Mont. 379, 512 P.2d 714, 716, 30 St.Rep. 707, as follows:

> "In Lee v. Stockmen's Nat. Bank, 63 Mont. 262, 284, 207 P. 623, this court set down the elements which the plaintiff must prove to make out a prima facie case of fraud: (1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury."

The buyers maintain that had they known the back taxes had not been "straightened out" they would not have come to Montana in the first place to inspect the marina facilities. This Court could get involved in a semantical discussion of the possible meanings of the phrase "straightened out". We feel, however, that it will suffice to say that since the back taxes were paid 5 or 6 months before this rescission action was brought, the entire question is moot. Further a close examination of the record fails to disclose sufficient credible evidence to meet the standard established in Cowan. As we stated in Ray v. Divers, 72 Mont. 513, 517, 234 P. 246:

" * * * Generally the representations must relate to a fact, as distinguished from the expression of an opinion (citing case), though an exception to that rule is illustrated in Como Orchard Co. v. Markham, 54 Mont. 438, 171 P. 274, and, of course, the representations must be made with respect to a material matter; that is, one which affects the complaining party in a substantial degree (citing case). All of these elements are fully comprehended in the more general terms: Representation, falsity, scienter, deception, and injury. (citing case)" (Emphasis added.)

The evidence in support of buyers' allegation of fraudulent inducement as it pertains to the policy of liability insurance fails to establish knowledge on the part of the seller as set forth in the trial court's finding of fact No. 4 below:

"During the three day period referred to in Finding #3, Chris Nelson or his son, Norman, acting as his agent represented to plaintiffs either that Chris Nelson had a policy of public liability insurance in force, which policy could be transferred to plaintiffs, or that he could secure such a policy. Though there is evidence on both sides of the question, a preponderance of the credible evidence indicates that Chris Nelson believed he had liability insurance on the property at this time." (Emphasis added.)

Knowledge on the part of the person making the representation, at the time it was made, and knowledge that it was false, is necessary to support a finding of fraud. Without it, the buyers fail in their proof. Lee v. Stockmen's Nat. Bank, 63 Mont. 262, 207 P. 623.

The admission into evidence that sellers obtained liability insurance on the premises in question after the letter of rescission was sent by the buyers has been argued by the buyers as immaterial evidence and error. This being an equity action tried to the court and the subject matter under consideration by the court being fraud, the court has wide discretion with respect to admission of evidence either to prove or disprove the allegation of fraud. Berberian v. Martin, 214 A.2d 189 (R.I. 1965).

- 6 -

In Koch v. Rhodes, 57 Mont. 447, 452, 188 P. 933, we held:

> "Where fraud is alleged, great latitude of proof is allowed, and every fact or circumstance from which a legal inference of fraud may be drawn is admissible. (Citing cases.)"

Therefore under these circumstances the trial court did not abuse its discretion.

Buyers next contend that their failure to obtain a 10-year renewable lease from the Fish and Game Commission amounted to a failure of consideration for the escrow agreement. Buyers further contend that sellers'failure to demand arbitration under paragraph 30 of the escrow agreement, their failure to plead arbitration as a defense and their counterclaim amounted to a waiver of the arbitration clause in the contract, and cite as authority: E. I. DuPont De Nemours & Co. v. Lyles & Lang Const. Co., 219 F.2d 328; Trubowitch v. Riverbank Canning Co., 30 Cal.2d 335, 182 P.2d 182; Finlayson v. Waller, 64 Ida. 618, 134 P.2d 1069; and Anderson v. Twin City Rapid Transit Co., 250 Minn. 167, 84 N.W.2d 593.

The cases from the foreign jurisdictions cited to support waiver are not factually in point with the problem we have before the Court. The cases cited deal with suits brought in lieu of arbitration and concern the subject matter which the arbitration clause was designed to cover. The case before us, however, not only deals with the subject matter of the arbitration clause, i.e. failure to obtain a 10-year renewable lease from the Fish and Game Department, but also deals with fraudulent inducement in the entering of the escrow agreement.

Sellers argue that because buyers are claiming rescission on the grounds of fraudulent inducement, it would have been non-responsive to demand arbitration under paragraph #30. For if rescission results because of fraudulent inducement, they argue, so would any right to arbitration.

- 7 -

Neither buyers nor sellers cite any authority directly on the question of whether an arbitration clause concerning failure of consideration is waived under these circumstances when fraudulent inducent is also pleaded to void the contract that contains the clause.

Corbin on Contracts, §1444, p. 449 states:

" * * * The fraud of one party, inducing the other's assent to the whole, makes the whole voidable at the latter's option; after a proper avoidance, the right to an arbitration falls along with all other rights created by the other promises that were made. In cases within this paragraph, the remedies for enforcement of arbitration agreements are not available, including the enforcing order authorized by an arbitration statute. Before issuing such an order the court must know that legal duty to arbitrate exists; this is an issue that the court itself must decide."

When a party to a contract attempts rescission of that contract because of fraudulent inducement and that issue does not come within the purview of the arbitration clause, the court must first determine if the contract is valid before it can grant relief through arbitration. In re Kinoshita & Co., 287 F.2d 951 (2nd Cir. 1961); Atcas v. Credit Clearing Corporation of America, 292 Minn. 334, 197 N.W.2d 448; Interocean Shipping Co. v. National Shipping and Trad. Corp., 462 F.2d 673 (2nd Cir. 1972).

Under these circumstances, the Court having found no fraudulent inducement to rescind the contract, we find no abuse of discretion by the trial court acting in equity in ordering the terms of the contract enforced.

The judgment of the district court is affirmed.

_____
                    Justice

We concur:

_____
  Chief Justice

- 8 -

------------------------------

_Frank I. Haswell_

_John Conway Harrison_

Justices

- 9 -