No. 14212

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

ARNOLD H. SCHULZ and MINNIE B. SCHULZ,
husband and wife, and ROBERT L. SCHULZ,

Plaintiffs and Appellants,

-vs-

FRED J. PEAKE and ANNA MAE PEAKE,
husband and wife,

Defendants and Respondents.

---

Appeal from: District Court of the Sixth Judicial District,
Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

For Appellants:

Landoe, Gary and Planalp, Bozeman, Montana

For Respondents:

Berger, Anderson, Sinclair and Murphy, Billings. Montana

---

Submitted on briefs: August 2, 1978

Decided: AUG 24 1978

Filed: AUG 24 1978

Thomas J. Kearney
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal in a damage action for alleged fraudulent representations in the sale of a motel. In a nonjury case, the court found for defendants and plaintiffs appeal.

Plaintiffs-appellants are Arnold and Minnie Schulz, husband and wife, and their son Robert Schulz. The family had operated a drive-in restaurant in Elkton, Oregon, before coming to Gardiner, Montana. While living at Elkton, they formed a friendship with Luis Dohnalek who later moved to Gardiner. Through Dohnalek they became interested in and later bought the Northgate Motel in Gardiner.

While living in Gardiner, Dohnalek became acquainted with defendants-respondents, Fred and Annamae Peake. He learned they were interested in selling the motel and Annamae Peake offered him $500 finders fee if he could find a buyer. At that time, he wrote appellants to find out if they were interested. They contacted Dohnalek and respondents, who confirmed their interest in selling. Minnie Schulz testified that Peake told them that in addition to the motel, there were 13 acres at the site. That figure was denied by the Peakes.

In May, 1973, Arnold and Robert Schulz went to Gardiner, stayed at the motel and spent three days inspecting the motel and the surrounding premises. They walked the grounds and inspected most, if not all, of the motel units. During this visit, they were informed by respondents that certain of the units were not habitable during the winter while others could be occupied all year. On May 10, 1973, appellants agreed to purchase the motel and made a $1,000 earnest

-2-

payment. Appellant Robert Schulz prepared the memorandum of the agreement which was signed by Robert and Arnold, and Arnold also signed his wife's name. They then returned to Oregon to try and sell their business at Elkton.

On July 13, 1973, Dohnalek wrote to appellants concerning certain details about the motel. At that time he told them if they did not decide to buy the motel that he, Dohnalek, was interested in buying it. He also told appellants that respondents would refund the earnest money payment if they did not purchase the motel. Either in the July 13 letter or an earlier letter, Dohnalek attached a sketch of the motel area.

Early in September, 1973, Arnold and Robert returned to Gardiner, moved into the motel and spent some 20 days there prior to executing a contract for the purchase of the motel. During this period they again inspected the units, talked to local people and generally educated themselves about the business and its problems. Three days before the contract was signed Minnie Schulz came from Oregon to look at the property. The parties signed a contract for deed which accurately described the property purchased and said contract was placed in escrow.

Approximately a year after the purchase, appellants had a controversy with a neighbor over a boundary line. They had their area surveyed and it resulted with the fact they owned approximately 1.3 acres of useable land instead of 13 acres. They then brought this action for damages alleging four specific misrepresentations. The District Court found no misrepresentations and no fraud.

Four issues are presented on appeal:

1. Was Luis Dohnalek an agent for Fred Peake?

-3-

2. Did the court err in its findings and conclusions holding that the "Complete Investigation" clause insulates sellers from fraud?

3. Did the court err in its failure to find that sellers misrepresented the acreage to the buyers?

4. Did the court err in failing to find sellers misrepresented the heating system?

Appellants argue the court ruled Dohnalek was not an agent because of the friendship between Dohnalek and the parties. The record does not sustain that argument. The court found that prior to May, 1973, Minnie Schulz had contacted Dohnalek asking him to locate a business in Gardiner. Dohnalek first suggested they purchase a grocery store in Gardiner, but appellants were not interested. It was later he learned respondents were interested in selling and wrote to appellants about the motel.

To have found Dohnalek an agent of respondents, the trial court would have to have found he came within the following two statutes and our cases interpreting those statutes.

Section 2-101, R.C.M. 1947, defines agency:

> "Agency defined. An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency."

Section 2-103, R.C.M. 1947, distinguishes between special and general agents:

> "Agents, general or special. An agent for a particular act or transaction is called a special agent. All other are general agents."

A person dealing with a special agent is bound at his peril to ascertain the scope of the agent's authority. Moore v. Skyles (1905), 33 Mont. 135, 138, 82 P. 799; Schaeffer v. Mutual Benefit Life Ins. Co. (1909), 38 Mont. 459, 465,

100 P. 225; Northwestern Electric Equipment Co. v. Leighton et al. (1923), 66 Mont. 529, 213 P. 1094; Benema v. Union Central Life Ins. Co. (1933), 94 Mont. 138, 147, 21 P.2d 69.

Sections 2-104, 2-105, and 2-106, R.C.M. 1947, define actual and ostensible agencies:

"2-104. Agency, actual or ostensible. An agency is either actual or ostensible.

"2-105. Actual agency. An agency is actual when the agent is really employed by the principal.

"2-106. Ostensible agency. An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him."

It is significant to note there is not one shred of testimony, nor any allegation that Luis Dohnalek or Fred Peake ever represented that Dohnalek was Peake's agent. All negotiations were admittedly conducted between appellants and respondents. Dohnalek was merely the conduit through which information was transmitted to appellants. Some of this information was provided by Peake, other information gathered by Dohnalek himself, and some by third parties through Dohnalek. But all of such information was gathered by Dohnalek as a friend of appellants, at their special instance and request, and not as the agent of Peake.

In the old case of Hartt v. Jahn et al. (1921), 59 Mont. 173, 181, 196 P. 153, the Court, in interpreting section 2-216, R.C.M. 1947 (then Section 5424 Revised Codes 1907), said:

"* * * It must be remembered that the subject matter is real estate, and that any contract conferring upon an agent or broker the authority to make a sale or to contract to make sale of real estate must be in writing. * * * As the statutes now read, any binding authority given to an agent to contract to sell land must be in writing. Inasmuch as the authority of the

-5-

agent must be in writing, he can have no more authority than is vested in him by the writing."

The burden of proof was on appellants to prove their claim. Certainly, if the agency relationship is contended to be material, appellants failed to sustain the burden of proof in establishing an agency. See Federal Land Bank of Spokane v. Myhre (1940), 110 Mont. 416, 101 P.2d 1017.

Under the law of these cases, the court found, as we must, that the evidence was insufficient to make out a prima facie case of agency.

As to any oral authorizations alleged, section 2-116, R.C.M. 1947, provides:

> "Form of authority. An oral authorization is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given an instrument in writing."

This section was interpreted (as Section 7939, Revised Codes of Montana 1921) in Hartt v. Jahn, supra, as heretofore quoted. In Electrical Products Consolidated v. El Camp Inc. (1937), 105 Mont. 386, 395, 73 P.2d 199, the Court said:

> "The decisive question presented for review by this court is whether the plaintiff made a case upon the law and the facts sufficient to sustain the judgment. * * * It is our opinion that such a case was not made; this because there was no sufficient showing of the authority of Day to avoid the effect of the statute requiring an agent's authority to be in writing in conformity with section 7939 * * *."

Nor can it be said that respondents ratified any action of Dohnalek, because Dohnalek took no action. He never claimed to be the agent of respondents nor did he ever exercise any such authority. This is a unique effort to make respondents responsible for alleged misrepresentations of Dohnalek, who admittedly never claimed to be the agent of respondents, nor did respondents ever represent to anyone he

was their agent. Neither can section 2-117, R.C.M. 1947, concerning ratification add any strength to appellants' already weak position. This section provides:

> "Ratification of agent's act. A ratification
> can be made only in the manner that would have
> been necessary to confer an original authority
> for the act ratified, or where an oral authori-
> zation would suffice, by accepting or restraining
> the benefit of the act, with notice thereof."

We find no error as to the first issue.

The second issue concerns the court's finding and conclusion that appellants relied on their own inspection of the motel and therefore respondents were not liable.

Paragraph 14 of the contract reads:

> "Examination of Property. The purchasers declare
> they are purchasing said property on their own
> examination and judgment and not through any
> representations to them made by the sellers, or
> their agents, as to its location, value, future
> value, income therefrom or as to its production."

In interpreting the contract, we look to the statutory guidelines provided in section 13-702, R.C.M. 1947:

> "Contracts--how to be interpreted. A contract
> must be so interpreted as to give effect to the
> mutual intention of the parties as it existed
> at the time of contracting, so far as the same
> is ascertainable and lawful."

Here, the language is clear and unambiguous. So being, it needs no construction and it is the court's duty to enforce it as made by the parties. Bullard v. Smith (1903), 28 Mont. 387, 72 P. 761; Frank et al. v. Butte & Boulder Mining & Lumber Co. (1913), 48 Mont. 83, 135 P. 904; Thompson v. Thompson (1976), 170 Mont. 447, 554 P.2d 1111; Danielson v. Danielson (1977), ____ Mont. ____, 560 P.2d 893, 34 St.Rep. 76.

Issues three and four will be considered together for they concern the allegations of misrepresentation of acreage and the heating system by respondents.

We must observe at this level of review of such allegations that the trial court has the unique position of observing the witnesses, their demeanor, and then finally passing on the credibility and weight to be given such testimony. We are confined to the cold record of that testimony and recognize that it is the trial court's province to judge the credibility of the witnesses. Davidson v. Lewis (1978), ____ Mont. ____, 579 P.2d 762, 35 St.Rep. 662.

Here the complaint originally set forth four alleged fraudulent misrepresentations as to:

    (1) Acreage;

    (2) Concealment of a previous highway take;

    (3) Lack of insulation in cabins; and

    (4) Possible leakage in the gas line.

Two of appellants exhibits, one a description of the property showing the highway take as being 1,961 feet, and the other a letter from Dohnalek telling appellants of said take, necessitated an abandonment by appellants of this allegation. The trial testimony and the depositions of appellants fell far short of supporting the complaint, a factor no doubt in the trial judge's acceptance of the credibility of appellants' testimony. All three appellants had contradicting testimony as to the insulation of the various cabins. At trial Robert testified, contra to his deposition, that Peake told him the riverside cabins, seven in number, could not be used in cold weather, but that there were eleven units that could be used.

The same contradictory type of testimony was given both by deposition and at trial about the alleged gas leakage. The local propane dealer, Harold Rediske, who had serviced the cabins for years, testified there had never been a gas

leak at the motel. Over the years they had trouble keeping the pilot lights clean and on, a problem common to that type of heating, but no major leak. Rediske testified that the major problem of heating the units was that there was only one tank to service all units, creating a pressure problem. This was solved by the installation of another tank at a cost of only $50 per year.

On appeal appellants allege a misrepresentation as to the heating system, a change from the original complaint, but nowhere in their testimony do they produce creditable testimony to sustain their allegations. The trial judge quite properly found no misrepresentations.

Finally, we consider the question of whether or not there was a misrepresentation as to the acreage.

Reviewing the facts as to the acreage involved in the purchase, we cannot see that the trial judge abused his discretion in finding for respondents on the evidence produced for his consideration.

Appellants twice visited the motel site before making the purchase. Arnold and Robert inspected it numerous times and had the boundary lines pointed out to them. Most certainly they must have recognized that the difference between 1.3 acres and the alleged 13 acres was great and should have asked questions before the purchase.

Appellant Robert drew up the earnest money agreement and made no mention of the acreage nor did the contract signed by the parties later in the fall of 1973.

In a very similar case, involving the purchase of a motel, Waller v. Heid (1976), 170 Mont. 501, 554 P.2d 1331, this Court held:

"Wallers contend defendant made these mis-representations to induce them to enter the contract: (1) that the motel and residence were winterized and could be operated the entire year; (2) that the highway to Yellowstone Park would be moved and pass directly in front of the motel; (3) that the plumbing and wiring to a second bathroom in the residence was roughed in and could be completed merely by hooking up the utilities; and (4) that the motel's washer and dryer worked. Wallers argue they would not have entered into the contract if these misrepresentations had not been made.

"It has long been the rule in Montana that a prima facie case of fraud is not established unless the plaintiff proves he relied on the truth of the representations made to him. Dunlap v. Nelson, 165 Mont. 291, 296, 529 P.2d 1394; Clough v. Jackson, 156 Mont. 272, 279, 479 P.2d 266; Young v. Handrow, 151 Mont. 310, 315, 443 P.2d 9. The district court found that Wallers relied on their own investigations of the property and those of Gary Teaney, rather than representations made by defendant. In Cowan v. Westland Realty Co., 162 Mont. 379, 383, 512 P.2d 714, this Court said:

> "'This Court has stated many times that its function on appeal is to determine whether there is substantial evidence to support the findings of the district court. This Court will not reverse the findings of the trial court unless there is a clear preponderance of the evidence against such findings. [Citing cases.]'

"It is undisputed that Wallers visited West Yellowstone twice and personally examined the motel and residence, including the bathroom and laundry room. Of particular significance is the fact they hired an agent with substantial real estate experience to investigate the property and make recommendations on the purchase. Wallers paid Gary Teaney $5,000 for his services. The district court could properly find from this evidence that no reliance was placed on any representations made by defendant. Without reliance there was no cause of action for fraud."
170 Mont. at 502-03. (Emphasis added.)

At no time during trial did appellants say they would not have purchased the motel had they been aware of the fact there was less than 13 acres. They said they would have thought more about it. Then, over a year later, after making the payments and continuing to make payments, they

brought this action for $25,000 damages--not for recission of the contract.

We held in Anderson v. Applebury (1977), ___ Mont. ___, 567 P.2d 951, 954, 34 St.Rep. 842:

> "It is well settled that a prima facie case of fraud is not established unless plaintiff proves the making of a material misrepresentation, and reliance upon the truth of such misrepresentation. (Citing cases.)" (Emphasis added.)

Applying our holding to this case, we note appellants had at least three opportunities to avoid this sale after inspecting it. Under these facts we cannot find the makings of material representations nor the reliance upon same by appellants.

The District Court judgment is affirmed.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
        Justices

-11-