GRINDROD, RESPONDENT, *v.* ANGLO-AMERICAN BOND COMPANY, APPELLANT.

(No. 2,247.)

(Submitted April 6, 1906.  Decided April 30, 1906.)

*Contracts—Fraud—Rescission—Evidence—Estoppel.*

Contracts—Fraud—False Representations—Evidence—Sufficiency.
 1.   Evidence examined, and *held* insufficient to show that the purchase of certain bonds by plaintiff was induced by false statements on defendant's part contained in certain circulars.

Contracts—Rescission—Estoppel.
 2.   Where certain bonds purchased by plaintiff specifically provided that the entire contract was therein set forth; that no one had authority to alter, change or modify the same in any manner; and that defendant company issuing the bonds was not to be bound by any statement, promise or agreement not therein contained, made by any person—

plaintiff, by retaining the bonds, making monthly payments thereon for more than a year after the date of their receipt, and further obtaining permission from defendant to act as its agent in the same capacity as that in which another agent was acting at the time plaintiff entered into the contract, was thereby estopped from rescinding the contract on the ground that he was misled to his prejudice by any representations made by such other agent or by any circular given him by the latter or mailed to him by the company before or after receiving the bonds.

Contracts—Rescission—Fraud—Reliance on Representations.
3. Where it appears that plaintiff in an action to rescind a contract, into which he alleged he was induced to enter by false and fraudulent representations made to him by defendant, had investigated for himself or had the means at hand to ascertain the truth or falsity of any representations made to him, his reliance upon such representations, however false they may have been, affords no ground of complaint.

Contracts—Breach—Evidence—Sufficiency.
4. Evidence examined, and *held* insufficient to sustain a cause of action for the breach of the conditions of a contract for the purchase of certain cumulative bonds.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Edward Grindrod against the Anglo-American Bond Company. Judgment for plaintiff, and defendant appeals. Reversed.

*Mr. H. S. Hepner, Mr. T. J. Walsh,* and *Mr. Eugene B. Hoffman,* for Appellant.

Where the party claiming to have been deceived investigates for himself, or the means are at hand to ascertain the truth or falsity of the representations, reliance upon the representations, however false they may be, affords no ground for action. (*Slaughter* v. *Gerson,* 13 Wall. 379, 20 L. Ed. 627, cited and approved by this court in *Pierce* v. *Ten Eyck,* 9 Mont. 353, 23 Pac. 423; *Osborne* v. *Missouri Pac. Ry.* (Neb.), 98 N. W. 685; *Brown* v. *Smith,* 109 Fed. 31; *Andrus* v. *St. Louis etc. Co.,* 130 U. S. 643, 9 Sup. Ct. 645, 32 L. Ed. 1054; *New York Cent. etc. R. R. Co.* v. *Difendaffer,* 125 Fed. 896; *Cagney* v. *Cuson,* 77 Ind. 494; *Anderson etc. Works* v. *Meyer,* 15 Ind. App. 385, 44 N. E. 193; *Mosher* v. *Post,* 89 Wis. 602, 62 N. W. 516; *Salem India Rubber Co.* v. *Adams,* 23 Pick. (40 Mass.) 256; *Farnsworth* v. *Duffner,* 142 U. S. 48, 12 Sup. Ct. 164, 35 L. Ed.

933; *Farrar* v. *Churchill,* 135 U. S. 609, 10 Sup. Ct. 771, 34 L. Ed. 246.)

Mere expressions of opinion or promises are not grounds for rescission. (*Market* v. *Mondy,* 11 Neb. 213, 7 N. W. 853; *Sheldon* v. *Davidson,* 85 Wis. 138, 55 N. W. 161; *Welshbillig* v. *Dienhart,* 65 Ind. 941; *Hubbard* v. *Long* (Mich.), 60 N. W. 50.)

The case made out by the complaint is analogous to an application for an insurance policy. The agent may puff it and misrepresent it, and relying upon those misrepresentations, I make application for it. The policy comes, it does not correspond to the agent's statement, but I accept it and perform my part for a few years and then seek to rescind. In such a case neither equity nor law will give any relief. The cases of *Bostwick* v. *Mutual Life Ins. Co.,* 116 Wis. 392, 92 N. W. 246, 67 L. R. A. 705, *New York Ins. Co.* v. *McMasters,* 87 Fed. 63, 30 C. C. A. 532, and *McMasters* v. *New York Life Ins. Co.,* 99 Fed. 856, 40 C. C. A. 119, fully discuss the law involved here. (See, also, *Oppenheimer* v. *Clunie,* 142 Cal. 318, 75 Pac. 901; *American Harrow Co.* v. *Martin,* 18 Ky. Law Rep. 432, 36 S. W. 178; *Doane* v. *Dunham,* 79 Ill. 131; *Berman* v. *Woods,* 38 Ark. 351; *Tarkington* v. *Purvis,* 128 Ind. 182, 25 N. E. 879, 9 L. R. A. 607, and cases cited in note, p. 609.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to recover from defendant certain sums of money with interest thereon from September 12, 1904, amounting in the aggregate to $1,750, which the plaintiff alleges he paid to defendant under contracts into which he was induced to enter by false and fraudulent representations made by defendant.

The complaint contains two causes of action. Omitting the formal parts, the first of these alleges, in substance, that on May 12, 1903, plaintiff and defendant, a corporation organized under the laws of California and doing business in California and

also in Montana, entered into a contract whereby the plaintiff became the purchaser from defendant of two cumulative cash bonds, numbered 676 and 677. That the plaintiff was induced to enter into said contract by reason of certain false and fraudulent representations made by defendant contained in printed circulars issued by and under the authority of the defendant, and accepted and acted upon as true by the plaintiff, as follows: (1) That in said circulars defendant represented to plaintiff that bondholders could surrender their bonds at any transition period and receive the amount paid to date into the maturity fund, plus interest at six per cent per annum, which representation was false and fraudulent and made for the purpose of defrauding plaintiff; (2) that in said circulars defendant represented to plaintiff that bondholders could at any time, when they could not continue their payments under the terms of the bonds, have the amount paid by them into the maturity fund returned to them, with six per cent interest per annum, which representation was false and made for the purpose of defrauding the plaintiff. That plaintiff, relying upon said representations, purchased said bonds and paid to the defendant at different times sums aggregating $310. That on or about August 1, 1904, plaintiff made demand of the defendant at its home office at San Francisco, California, that it return to him the amount paid as aforesaid, but that it refused and still refuses to do so. That in said bonds it is provided that they shall mature in classes A, B, C, D, and E, and that bondholders should have the privilege of withdrawing in any of said classes, but that said defendant, without the knowledge and consent of plaintiff and against his express wish and instructions, progressed said bonds from class A through intermediate classes into class E, and would not permit plaintiff to withdraw in any of said classes, and has declared said bonds forfeited because plaintiff has failed to pay the assessment in class E; that the maturity fund is created from the sale of bonds of the defendant, and the maturity fund to mature bonds sold in Montana is dependent upon the receipts from the

sale of bonds within the state of Montana, and that defendant, after the sale of said bonds to plaintiff, discontinued sales in Montana, thereby making impossible the maturity of the bonds sold to plaintiff, thus defrauding plaintiff; and that plaintiff has fully performed all the conditions in said contract to be kept and performed by him.

The following is a copy of one of the bonds which is made a part of the complaint, with the attached privileges, requirements, and conditions, so far as the same are pertinent to the present inquiry, those not set forth having reference only to the loan feature of the contract:

"$1,000.00                                                    $1,000.00

"Anglo-American Bond Company,

"San Francisco, California.

"Cumulative Cash Bond.

"In consideration of the application for this bond and contract and of the sum of $5.00, received with said application as a registration fee, and in consideration of the payments herein to be made and of the agreements to be kept and performed and in further consideration of the benefits flowing from the requirements, privileges and conditions printed on the back hereof, the Anglo-American Bond Company promises to pay Edward Grindrod of the city of Helena, state of Montana, one thousand dollars in gold coin, upon the maturity and completion of this bond and contract in accordance with the privileges, requirements and conditions printed on the back hereof which are hereby made a part of this bond and contract as fully as if they were cited at length over the company's signature. In witness whereof, the Anglo-American Bond Company has executed this bond in the city of San Francisco, California, this twentieth day of July, 1903.

"Anglo-American Bond Company.

"C. O'Brien, Manager.

"[Seal of the Anglo-American Bond Company.]

"Countersigned: H. L. Paddock, Auditor.

## "Privileges.

" (2) This bond shall mature and be payable when there has accumulated in the maturity fund of this and similar bonds the sum of one thousand dollars, provided that all similar bonds of prior date have been matured and paid.

" (3) This bond may be surrendered at any maturity period. If the bondholder shall surrender this bond, the company shall, upon thirty days' notice in writing, pay said bondholder a sum equal to the aggregate amount the said bondholder shall have paid into the maturity fund plus interest at six (6) per cent per annum, as rapidly as accumulated in the maturity fund.

## "Requirements and Conditions.

" (1) The benefits accruing to the owners of this and similar cumulative bonds shall be governed by the date of their original issuance, and the priority of said date shall determine maturity and order of payment.

" (2) Time is the essence of this agreement. All payments hereunder are due and payable on the first day of each and every month and delinquent on the fifteenth thereof.

" (3) Failure to pay any monthly payments on or before the fifteenth day shall render this bond null and void and all payments previously made shall be forfeited and shall revert to the company.

" (4) Monthly payments on this bond shall be: Class A, one dollar; class B, four ($4.00) dollars; class C, seven ($7.00) dollars; class D, nine ($9.00) dollars; class E, ten ($10.00) dollars, and after maturity eleven ($11.00) dollars, subject to the following deductions monthly for the profit and emolument of the company: Class A, twenty cents; class B, fifty cents; class C, one dollar; class D, five dollars, and after·maturity, one dollar; but no deductions shall be made from payments to class E. After maturity the bondholder shall pay, on or before the fifteenth day of January and July of each year a fee of $10.00 or $20.00 per annum, which shall go to the

maturity fund for the benefit of unmatured bonds until the obligations of the bondholder are fully discharged.

"(5) Upon maturity of this bond, the company shall notify the registered owner and payments of eleven dollars per month shall then begin and continue until all the obligations of the bondholder to the company are discharged. After said notice of maturity, the bondholder shall forthwith receive a loan of one thousand dollars in gold coin, on furnishing security satisfactory to the company. Said loan shall be subject to a charge of ten dollars."

"(10) Failure to pay the sum of eleven dollars on the first day of any month or before the fifteenth day thereof shall render this bond null and void and the company may proceed to foreclose its mortgage and sell and dispose of the security thereunder without notice to the bondholder."

"(16) The agreement between the company and the bondholder is fully set forth herein and no one has authority to alter, change or modify this bond in any manner, and any statement, promise or agreement made by any person not contained herein shall not be binding on the company or the bondholder."

"(17) When the bondholder has been notified that his bond has progressed from one class to a higher class, he shall send his bond to the company to have the transfer to new class indorsed thereon, but no charge shall be made for such indorsement."

The second cause of action is identical with the first, except that its purpose is to recover the sum of $1,440, paid in like manner on bonds numbered 804 to 823, inclusive, obtained subsequent to those made the basis of the first cause of action, and with like privileges, requirements and conditions.

The answer is a general denial. Upon the issues thus presented the cause was tried. Defendant's motion for a nonsuit having been denied, and no proof being offered by it, the court directed a verdict and judgment for plaintiff for the amount demanded, with interest. Defendant has appealed.

The first assignment is that the court erred in overruling the motion for nonsuit. The grounds of the motion were: (1) That there was no evidence tending to show any false or fraudulent representations whereby plaintiff was induced to enter into the contract; (2) that the evidence shows that the plaintiff failed to comply with the terms of the contract on his part upon which he seeks to recover; and (3) that there is no evidence tending to show that the defendant ever demanded settlements at the maturity or transition periods provided for in the contract or any of them, or that the bonds were advanced from class to class and finally into class E without the plaintiff's consent, or that he was denied the right to withdraw at any maturity period, or that the defendant ever discontinued sales in the state of Montana, thereby rendering the maturity of plaintiff's bonds impossible.

From a cursory examination of the complaint, it is apparent that plaintiff seeks to recover on one or the other of two theories, which are entirely inconsistent. The first of these proceeds upon the notion that the contract is void by reason of false and fraudulent representations of material matters upon which plaintiff relied, and by which he was induced to enter into it. The second alleges two distinct breaches of the contract: First, in the advancement of the bonds into class E without plaintiff's consent, a refusal to permit plaintiff to withdraw at any maturity period, and a forfeiture for failure to make the payments required after advancement to class E; and, second, in that the maturity of the bonds sold in the state of Montana depended upon the sales made in Montana exclusively, and that defendant ceased to sell bonds in Montana after the purchase by the plaintiff, thus rendering impossible for plaintiff's bonds to mature at any time.

It is not necessary to analyze the investment scheme conducted by the defendant corporation or to discuss at length the character of the contracts made with the bondholders. It is sufficient to say that the plan contemplated the advancement of the bonds successively from class A to class E as fast as they

matured, upon notice to the stockholder, who at each advancement had the option to withdraw, until advancement to class E. After this occurred the right of withdrawal ceased until final maturity in this class. This is clearly expressed in the contract. The power to forfeit for failure to make the monthly payments in each class, and until final maturity in class E, was vested in the defendant.

Treating the complaint as stating a cause of action for a rescission of the contract for fraud and misrepresentation and to recover back the money paid under it, there is no evidence before us to sustain its allegations or to justify the verdict. The only evidence offered was a copy of a circular sent to plaintiff after the contract was made. Plaintiff stated in his evidence that he relied upon the statements contained in a circular given him by one Henry, an agent of defendant, who induced him to enter into the contract. It nowhere appears, however, that the two circulars contained the same statements. Assuming this to be the fact, the circular introduced in evidence contains no false statement as to the nature or terms of the contract. The portions of it which are pertinent here are the following:

"Bonds can be surrendered for face value, and loans repaid in small monthly installments of $11 per month per $1,000 and 2 per ct. per annum.

"Before surrender monthly dues are $1.00, $4.00, $7.00, $9.00, $10.00 in the different classes.

"Loans made on any kind of approved security. Withdrawals and 6 per cent at any transition period. Company disclaims responsibility for misstatements of agents. Read your bond carefully.

### "Withdrawal Privileges.

"Bondholders can surrender their bonds at any transition period and receive amount paid to date into maturity fund plus interest at 6 per cent per annum. This is most important

privilege and prevents loss in case of illness or loss of employment.

## "Advantages.

"Payments on the cumulative cash bonds are $1.00 per month to begin. This is in class A. The bondholder is notified when the profits in this class entitle him to pass to class B, and commencing the following month his payments are $4.00 per month. From class B he passes to class C, and his payments are increased to $7.00 per month; thence to class D, $9.00 per month. From class D he passes to class E, paying $10.00 per month. It will be seen that the loans accrue quickly, for 5 bonds accumulate 1 maturity in class A, 4 in class B, 3 in class C, 5 in class D, and 5 in class E. Five bonds sold in one day mean one progression from class A and so on.

## "Other Advantages.

"(1) If you cannot continue your payments the money you have paid into maturity fund is returned with 6 per cent interest as provided in the bond."

There is no other statement which undertakes to represent the terms of the bonds and the rights accorded to the purchaser. Comparing the foregoing with the privileges, requirements, and conditions which are attached to and form a part of the bonds, they correspond exactly with them, and in no sense of the term can they be regarded as false statements. But, even if they were, the circular distinctly requires the purchaser to read the bonds. One of the conditions attached to the bonds themselves, which the plaintiff says he read, specifically provides that the entire contract is set forth in the bonds, that no one has the authority to alter, change, or modify the contract in any manner, and that the company is not to be bound by any statement, promise, or agreement, not contained therein, made by any person. When the plaintiff received and read his bonds, it was his privilege then to rescind his contract if he found that he had been misled. Having elected to retain them, he cannot now be heard to say that he was misled to his

prejudice by any representations made by Henry, or by any circular given him by Henry or mailed to him by the company before or after that time. For the evidence shows further that he made monthly payments for more than a year after that date, and actually obtained permission from the company to act as its agent in the same capacity as that in which Henry was acting at the time he entered into the contract.

When it appears that a party, who claims to have been deceived to his prejudice, has investigated for himself, or that the means were at hand to ascertain the truth or falsity of any representations made to him, his reliance upon such representations, however false they may have been, affords no ground of complaint. (*Pierce* v. *Ten-Eyck*, 9 Mont. 349, 23 Pac. 423; *McCormick* v. *Hubbell*, 4 Mont. 87, 5 Pac. 314; *Slaughter's Admr.* v. *Gerson*, 13 Wall. (U. S.) 379, 20 L. Ed. 627; *Osborne* v. *Missouri Pac. Ry. Co.* (Neb.), 98 N. W. 685; *Andrus* v. *St. Louis, S. & R. Co.*, 130 U. S. 643, 9 Sup. Ct. 645, 32 L. Ed. 1054; *Cagney* v. *Cuson*, 77 Ind. 494; *Salem India Rubber Co.* v. *Adams*, 23 Pick. (Mass.) 256; *Farnsworth* v. *Duffner*, 142 U. S. 48, 12 Sup. Ct. 164, 35 L. Ed. 931; *Long* v. *Warren*, 68 N. Y. 426.)

Viewing the complaint now as one for breach of the contract, there is no evidence to sustain a cause of action for the breaches alleged. The evidence shows that the defendant, whenever the bonds were ready to be advanced from one class to another, duly notified the plaintiff of that fact, and that the plaintiff immediately made remittances to meet the increased payments required by each advance. There is no suggestion in the evidence that the plaintiff ever at any time requested at any maturity or transition period, or at any other time, the privilege of withdrawal, until August, 1904, three months after he had ceased to make any payments whatever, and he had received notice that the contract would be forfeited unless prompt payment should be made. Nor is there any evidence that the maturity fund, out of which the plaintiff expected to have his bonds paid, depended exclusively upon the sale of bonds made

in the state of Montana. This is not a stipulation in the bond. Neither is there anything in the circular, nor on the face of the bonds themselves, nor in any of the conditions attached thereto, to indicate that any bond depended for its maturity upon the funds derived from sales of bonds at any particular locality. So that from whatever point of view we examine the evidence, we do not find any justification for the action of the district court in overruling the motion for nonsuit. It should have been sustained.

We have assumed for present purposes that the complaint states a cause of action on one or the other of the two theories mentioned. We do not care to be understood as expressing any opinion on this subject. Its sufficiency was challenged in the district court by demurrer. The demurrer, however, was never passed upon by the district court, for the reason that the defendant itself agreed that it might be overruled. So the question of the sufficiency of the complaint is not among those properly before this court for judgment. These remarks apply also to the second cause of action.

Since the judgment must be reversed for the reasons stated, it is not necessary to notice other assignments of error.

The judgment is reversed, and the cause is remanded.

*Reversed and remanded.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.