No. 12817

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

EMMA LOWE,

Plaintiff and Appellant,

-vs-

FRED C. ROOT, et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Richard J. Conklin argued, White Sulphur Springs,
Montana

For Respondents:

Garlington, Lohn and Robinson, Missoula, Montana
Sherman V. Lohn argued and Gary L. Graham argued,
Missoula, Montana

---

Submitted: November 22, 1974

Decided: FEB -6 1975

Filed: FEB -6 1975

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal by the lessee, Emma Lowe, from a summary judgment of the district court, Missoula County, granted in favor of lessors, Fred C. Root, Carl E. Dragstedt, Evelyn Dragstedt, Ella R. Clausen, Elmer S. Dragstedt and Elinor R. Dragstedt.

On April 9, 1970, Emma Lowe entered into two nearly identical leases with the lessors, each involving an undivided one half interest in the same real property described as the Belmont Hotel in the city of Missoula. One lease identified Fred Root as the lessor, the other identified the Dragstedts and Ella Clausen as lessors.

Each lease provided that the term of the lease should run up to and including March 31, 1974. The lessor expressly covenanted for the lessee the quiet enjoyment of said term. Lessee agreed to:

> "* * * care for and maintain the interior of said premises and the exterior casings of all windows located on said premises; to permit no unlawful use of said premises; to make no major alterations without permission of the lessor; to maintain and repair the heating plant and hot water heater, * * * and to carry adequate insurance to protect the lower floor tenants from any water damage."

The lessors, for their part, were:

> "* * * to keep and maintain the exterior walls of said premises and the roof, and to be responsible for the care and repair of said roof * * *."

All parties expressly understood and agreed that they had examined the premises and knew the condition thereof.

While in possession of the premises lessee Emma Lowe received a letter for the fire marshal, dated January 23, 1973, outlining a number of violations of the Life Safety and Electrical Codes of the city of Missoula and state of Montana. With the sole exception of deficiences with respect to the fire escape, all deficiencies enumerated in the letter involved the interior portion of the building. The letter referred to a letter dated December 23, 1970 which listed many of the same deficiencies. Emma Lowe admitted receiving this 1970 letter. The January 1973 letter ordered the violations to be corrected by August 1, 1973.

Lessor Root contacted the county attorney and requested him to initiate an action to condemn the premises from further use as a hotel, boarding house or rooming house. On May 14, 1973, an order of condemnation was filed in the district court declaring the premises to be a fire hazard and a public nuisance and ordering all parties to this instant action to alter and repair the building on or before August 1, 1973. On August 3, 1973, the district court granted summary judgment, affirming the order of condemnation and directing the state fire marshal to proceed with its enforcement.

On June 19, 1973, Lowe filed a complaint in district court against Fred Root seeking lost profits for the remainder of the lease term and renewal term. The pertinent grounds of the complaint were: The premises were unfit for the purpose for which they were rented. Defendant Root had failed to maintain the premises in a good and proper fashion so that they could be operated for the purpose for which the lease was intended. Plaintiff Lowe had demanded that defendant Root perform according to the terms of the contract to restore the premises to a good and proper condition for the purpose for which they were rented and that defendant refused. Emma Lowe had been caused to become the defendant in the condemnation action because of the failure of defendant to repair.

In Count VIII of her complaint Lowe alleged in the following garbled fashion:

> "* * * That they [the defendants] fraudulently concealed information concerning the defects on the premises, from the plaintiff and fraudulently withheld the same information, which was known to them concerning the defective condition of the premises and that said defects were concealed unobservable by a common examination of the premises, and that the plaintiff, in reliance on the assurance of the defendants that the premises were, in fact, in fit and proper order, basis for the performing of the business of a hotel rental as they had been leases for, entered into the agreement."

Count IX of the complaint alleged:

> "That the defendant has wilfully, wrongfully, unlawfully, and intentionally attempted to drive the plaintiff from the full and quiet enjoyment of the premises, under the lease. That the defendant, Fred C. Root, is the City Attorney of the City of Missoula, and was privity to knowledge concerning the defects above alleged in the premises. * * *

That said defendant, Fred C. Root, has acted
willfully, maliciously, and wrongfully in an
attempt to vex, harass, annoy and intimidate the
plaintiff * * *. The defendant has, as an agent
for the * * * [Dragstedts and Clausen] and for
himself used the position of his office to exert,
through the County Attorney's Office, caused to be
filed a complaint alleging that the plaintiff is
guilty of allowing the premises to fall into decay,
and further the defendant has, at his specific request
and intent, caused the County through the County Attor-
ney's office, to issue an Order declaring the premises
a fire hazard and attempting to abate the same."

Three days later Lowe filed a nearly identical complaint against

the remaining defendants. The only substantial difference in this

second complaint was she alleged that Root acted as the agent of

the other defendants.

Subsequent to the condemnation, Lowe vacated the premises and

no further rentals were paid.

The two actions heretofore mentioned, plus an unlawful detainer

action filed by defendants against plaintiff Lowe were consolidated.

Defendants moved for summary judgment. In its judgment and order

granting defendants' motion, the district court held that under

the terms of the leases defendants were not obligated to make the

substantial changes and alterations required; that section 42-202,

R.C.M. 1947, limits recourse by a tenant to vacating the premises

or performing repairs up to the amount of one month's rental where,

as here, the leased premises are for human habitation; that punitive

damages cannot be awarded without a showing of actual damages; and,

that plaintiff inspected the leased premises and knew its condition.

Plaintiff Lowe appeals from the district court's granting of

defendants' motion for summary judgment.

Three issues are presented for consideration on appeal:

(1) Was the district court correct in granting summary

judgment to the defendants on the issue of fraud?

(2) Was the district court correct in its determination that

sections 42-201 and 42-202, R.C.M. 1947, constitute a bar to the

claim of plaintiff?

(3) Was the district court correct in its determination that

plaintiff's complaint did not present a factual question of wrongful

disruption of possession?

- 4 -

We answer all questions in the affirmative.

As to the issue of fraud, the previously quoted Count VIII of the complaint alleged fraudulent concealment of certain information as to defects in the property prior to the leases.

Although appellant appears to have abandoned any argument that she was defrauded as to the physical condition of the premises, we shall discuss that issue in order to show that summary judgment in favor of respondents was proper with respect to that level of fraud. In support of her misrepresentation argument, appellant cites Lee v. Stockmen's National Bank, 63 Mont. 262, 284, 207 P. 623. Lee sets forth the elements necessary to prove actual fraud. it goes further, however, and states:

> "'When it appears that a party, who claims to have been deceived to his prejudice,has investigated for himself, or that the means were at hand to ascertain the truth * * * of any representations made to him, his reliance upon such representations made to him, however false they may have been, affords no ground of complaint.' (Grinrod v. Anglo-American Bond Co., 34 Mont. 169, 85 Pac. 891; Power & Bros. v. Turner, 37 Mont. 521, 97 Pac. 950; 26 C.J. 1149.)" (Emphasis supplied).

In other words, if appellant's inspection of the premises revealed or would have revealed the true physical condition of the premises, she would have no right to rely upon any concealment by respondents with respect to the physical condition of the premises.

Both leases provide that the parties "agree that they have examined the premises and know the condition thereof". Appellant admits she inspected the premises. A review of the deficiencies as cited in the order of condemnation, reveals that all of the alleged defects were open and notorious. A superficial inspection of the building would reveal those deficiencies. Applying the facts of this case to Lee, and particularly to the language quoted heretofore, necessitates a finding that an actionable case of fraud as to the physical condition of the premises could not be found under the circumstances.

The claimed misrepresentation was not argued by appellant Lowe in the trial court, except in what may be described as an oblique manner. The rather garbled allegation in Count VIII of the complaint

did not, by itself, allege fraud as to legal consequences flowing from the physical condition of the premises.

Following the granting of summary judgment, appellant filed what she called a motion for rehearing. For the first time, not in the motion, but in the brief filed with the motion, appellant Lowe rather obliquely states that:

"* * * the premises were not in fact, fit for the purpose of leasing the same as a hotel and that the knowledge that the premises were not fit for the purpose for which they were leased was a special and peculiar knowledge available to the defendants through their agent, and not readily available to the plaintiff by mere examination of the premises. That it required an expertise, that the defendant possessed and the plaintiff did not.* * *."

With this bare reference at this point in time, the trial court will not be put in error. It is difficult to lend credence to the claim of Emma Lowe of fraudulent misrepresentation in light of the information contained in the exhibit attached to the order of condemnation. The letter dated January 1973 to Lowe recites that in a letter dated December 23, 1970, many of the discrepancies were pointed out. This much later, beyond the period of the statute of limitations, more than an oblique reference in a brief on a motion for rehearing would be necessary to resurrect a fact issue on motion for summary judgment.

Appellant's second issue is whether sections 42-201 and 42-202, R.C.M. 1947, constitute a bar to the claim of appellant. Those sections provide:

"42-201. The lessor of a building intended for the occupation of human beings must, in the absence of an agreement to the contrary, put it into a condition fit for such occupation, and repair all subsequent dilapidations thereof which render it untenantable, except such as are mentioned in section 42-105."

"42-202. If, within a reasonable time after notice to the lessor of dilapidations which he ought to repair, he neglects to do so, the lessee may repair the same himself, where the costs of such repairs do not require an expenditure greater than one month's rent of the premises, and deduct the expenses of such repairs from the rent, or the lessee may vacate the premises, in which case he shall be discharged from further payment of rent, or performance of other conditions."

Section 42-105, R.C.M. 1947, simply states:

> "The hirer of a thing must repair all deteriorations
> or injuries thereto occasioned by his ordinary neg-
> ligence."

In Landt v. Schneider, 31 Mont. 15, 17,18, 77 P. 307, the

Court said:

> "It is an elementary principle of law that, in the
> absence of a statute or agreement, there is no implied
> warranty that leased premises are suitable for the
> purposes for which they are demised, or that the lessor
> will keep the property in repair."

See also: Kintner v. Harr, 146 Mont. 461, 482, 408 P.2d 487.

Montana's statutes were derived from the California Civil Code,

sections 1941 and 1942. In 1881, in Van Every v. Ogg, 59 Cal. 563,

566, the California Supreme Court well stated the reasons for the

two statutes:

> "It is insisted that the section last cited [42-201],
> by operation of law, inserts in every lease a covenant
> on the part of the landlord to repair. But bearing in
> mind that at the common law no such covenant was implied,
> and reading the two sections together, the intent seems
> clear that the obligation of the landlord should be limited
> by the extent of the privilege conferred upon the tenant;
> that it is the duty of the landlord to repair upon notice,
> and if he does not perform this duty he is to be compelled
> to pay, by deduction from the rent, to the extent of a
> month's rental---or, at the option of the tenant, the term
> be concluded without redress to the landlord."

Then the California Court went on to point out that prior to an

amendment in 1874, section 1942 of their civil code read:

> "'If, within a reasonable time after notice to the
> lessor of dilapidations which he ought to repair,
> he neglects to do so, the lessee may repair the same
> himself, and deduct the expenses of such repairs from
> the rent, or otherwise recover it from the lessor.'"

In 1922, this Court decided Noe v. Cameron, 62 Mont. 527, 532,

205 P. 256, a case almost identical to the instant appeal. In Noe

an action was brought to recover damages alleged to have been

sustained by plaintiff as the lessee of a hotel because of the

failure of defendant to make repairs after notice was given by

plaintiff. This Court, citing Bush v. Baker, 51 Mont. 326, 152 P. 750,

said:

"'* * * These sections [42-201 and 42-202], as we are
told in the report of the Code Commission, were taken
from California, and investigation discloses that they
came to us with a construction upon them which leaves no
room for doubt. [Cases cited]. This construction is to
the effect that, if the landlord fails to repair after
notice, the tenant may himself repair, within a certain
limit, or move out; but he has no redress in damages for
injury to person or property consequent upon the landlord's
failure to repair. Whether this construction be right
or not, it was presumably adopted with the sections them-
selves, it constitutes a rule of property, and the courts
of this state are without authority to alter it.'"

Beyond a doubt a hotel is "a building intended for the occupa-
tion of human beings" and thus within the scope of sections 42-201
and 42-202, R.C.M. 1947. Appellant had the choice of making the
repairs called for by the letter of the fire marshal and deducting
the cost from the rent payments, to the extent of one month's rent,
or to vacate the premises. She cannot, however, recover damages
from respondents for their failure to put the hotel into a condi-
tion fit for the occupation of human beings.

This result is not affected by the fact that one of the
discrepancies alleged in the letter of the fire marshal was the
fire escape and that the lessors had covenanted "to keep and
maintain the exterior walls of said premises". Conceding for the
sake of argument that the fire escape was within the definition
of "exterior walls" and thus the duty of respondents to repair it,
such clause in the lease added nothing to the statutory duty of
the lessors imposed by section 42-201, R.C.M. 1947. Since the
language of the lease added nothing to the statutory duty, the
limitation of section 42-202, R.C.M. 1947, remains applicable.
We do not want to be understood as holding that the parties could
never contract in excess of the statutory duties with respect to
dilapidations which rendered the premises untenantable. We merely
state that this is not such a case.

In appellant's third issue on appeal she asserts the complaint
states a cause of action in tort and breach of contract based upon
the disturbance of her contract right to quiet enjoyment of the
premises. She intimates that respondents are liable under this

theory of action because respondent Root allegedly requested the county attorney to bring action against her for the purpose of ousting her from the leased premises. Her complaint also hints at an action for malicious prosecution and that Root's position as city attorney had some relevance to her cause of action.

Any hint of an action for malicious prosecution can be quickly disposed of. Elements of that action, among others, are: (1) the prior proceeding must have terminated in favor of the present plaintiff, and (2) there must be an absence of probable cause for the institution of such proceeding. 54 C.J.S. Malicious Prosecution, §4. Here, the condemnation action terminated in summary judgment in favor of the state.

Cases cited in the Annotation, 41 ALR2d 1414, 1442, illustrate the rule that where a tenant's enjoyment is interfered with in the exercise of the police power, and is not caused by the breach of any obligation owed by the landlord to the tenant, such inter-ference does not constitute a breach of the covenant for quiet enjoyment. Appellant seems to accept this as a general rule but contends that the affirmative actions of Root in instigating the condemnation action constitute a breach of the quiet enjoyment covenant.

After exhaustive search, we find only one case having similar facts. In Dolman v. United States Trust Co. of N.Y., 134 N.Y.S.2d 508,510, the trial court denied the defendant's motion to dismiss the complaint, stating:

> "For, if the plaintiff can support his claim that the defendant by its affirmative act instigated and facilitated the condemnation proceedings [eminent domain] and the con-sequent eviction, then in my view the plaintiff has presented a cause of action for breach of the covenant of quiet en-joyment."

However, on appeal Dolman was reversed, 2 N.Y.2d 110, 138 N.E.2d 784, 157 N.Y.S.2d 537,541, the Court of Appeals held "the tenant was evicted by reason only of the exercise of the sovereign power of eminent domain" and that the lessor's cooperation with the city did not constitute a breach of the covenant of quiet enjoyment.

We are unwilling to hold that the scope of the covenant of quiet enjoyment precludes a lessor, knowing of violations of ordinances and statutes, from reporting such violations to the authorities. We should not require a lessor to risk damages being assessed against him because he has taken it upon himself to protect the public by reporting the facts to the authorities.

Here, the district court in the condemnation action established that the defects on these premises constituted a fire hazard. The public interest is served by allowing any person who has knowledge of a risk to public health of safety, be he lessor or otherwise, to feel free to report such risk to the authorities without fear of having later to respond in damages. The intent of the lessor in reporting such a risk to public health and safety is immaterial, the public interest being paramount. The fact that lessor was the city attorney is likewise immaterial, there being no privity between the city and county attorneys. Root was in the position of any other private lessor.

Having examined the issues raised and finding no merit, we affirm the judgment.

_Wesley Castle_
Justice

We Concur:

_John Conway Harrison_

_Frank I. Haswell_

_Gene B. Daly_
Justices

_Gordon R. Bennett_
Hon. Gordon Bennett, sitting for
Chief Justice James T. Harrison.