No. 81-460

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

ROGER W. JENKINS,

Plaintiff and Appellant,

vs.

LARRY JOE HILLARD, JR. and
LARRY HILLARD,

Defendants and Respondents.

---

No. 81-461

---

LARRY HILLARD,

Plaintiff and Appellant,

vs.

ROGER W. JENKINS,

Defendant and Respondent.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable Jack Shanstrom, Judge presiding.

Counsel of Record:

For Appellants:

Landoe, Brown, Planalp, Kommers & Lineberger, Bozeman,
Montana

For Respondents:

Steven Nelson, Bozeman, Montana

---

Submitted on briefs: March 4, 1982

Decided: June 29, 1982

Filed: **JUN 2 9 1982**

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal of two summary judgments issued by the District Court of the Eighteenth Judicial District, Gallatin County.

Respondent, Larry Joe Hillard, is the son of respondent, Larry Hillard. In March 1979 the son sold a hotel in Three Forks, Montana, to appellant, Roger Jenkins. The father (hereinafter referred to as Hillard) showed appellant the hotel, conducted the contract negotiations for its sale, and signed the contract for sale as his son's attorney-in-fact.

Negotiations for the sale of the hotel occurred over about a six-month period. During this time, appellant lived in Seattle and came to Three Forks whenever Hillard was free to discuss the sale.

Appellant inspected the hotel thoroughly only once and was accompanied by Hillard. Appellant claims that during this inspection Hillard told him that the hotel building was in excellent condition and that it was for sale because Hillard was tired of managing it for his son. Concerning the condition of the heating system, appellant in his deposition claims that Hillard made the following representations:

> "Q. And when you got specifically to the boiler room, or you know, the area which contained the boilers and the heating system, did he make any statements concerning the condition of those things? A. Yes. He stated that the -- let me preface that. There was about two and a half inches of water on the floor in the boiler room and right away I questioned that and I was told that there was about a 400-gallon hot water holding tank and water was leaking out of it and it had a patch on it and I asked him what that was, and he said, 'Well, there's a small crack in the holding tank and that can be

welded,' and he had checked with local welders and he was assured that it could be welded, so it was inconsequential. At that time I asked him what condition the boilers were in and he told me that they had a slight problem with the pilot light and that there was no problem with that, but that it was only an adjustment. I was assured that both the heating system and the boilers were more than adequate."

Appellant also stated that the manager of the hotel prevented him from making further inspections of the building. When appellant told Hillard that the manager had prevented his further inspections, Hillard told appellant he would take care of the situation. Appellant did not try to inspect the premises after this conversation with Hillard.

In his deposition, Hillard stated that he thought the heating system was operating properly. Hillard also said he did not recall making comments on the condition of the boilers.

Appellant purchased the hotel in March 1979, and about the second week in April he discovered that the boilers did not work properly. Appellant stated that he then spent about $35,000 to repair and rebuild the hotel's heating system.

The contract for sale of the hotel contained the following provisions:

". . . Buyer has inspected and is familiar with the premises and the physical condition of all the furniture, fixtures and equipment and improvements thereon and therein, and enters into this Agreement on his own independent investigation."

and

"This contract contains the entire agreement between the parties and the Buyer affirms that neither Seller nor any agent of the Seller has made any representations or promises with respect to or affecting the property herein described on this contract

not expressly contained herein and that Buyer affirms that he relies upon his own personal observation and examination of the property herein described."

Appellant had given Hillard a $15,000 promissory note as part of the transaction. $5,000 was payable on the note on March 1, 1979, and $10,000 payable on or before August 30, 1979.

In January 1980 Hillard brought an action on the note, claiming that appellant failed to pay the $10,000 due on August 30, 1979. In March 1980, the appellant brought a new and independent action against both the son, as seller, and the father, as the son's agent, alleging that the father had fraudulently misrepresented the condition of the hotel's heating system.

In April 1980, the appellant answered Hillard's complaint, alleging as an affirmative defense that Hillard fraudulently misrepresented the condition of the hotel's heating system and counterclaiming for a return of the $5,000 he already paid on the note.

Hillard moved for summary judgment on his promissory note action and on the fraud action began by appellant. The District Court granted both motions for summary judgment. The District Court found that appellant had ample opportunity to inspect the hotel and that he understood the clauses of the contract in which he affirmed sole reliance on his own inspection. The District Court concluded, as a matter of law, that appellant had failed to make a prima facie showing that he had the right to rely on Hillard's alleged misrepresentations.

The sole issue on review is whether the District Court erred in granting both summary judgments.

Under Rule 56(c), M.R.Civ.P., a summary judgment is proper only when there is no genuine issue of material fact and when the moving party is entitled to a judgment as a matter of law. Summary judgment is therefore not a proper tool for resolving disputed issues of fact and is accordingly improper whenever a material factual matter is in dispute. Flanagan v. Curran (1974), 164 Mont. 262, 521 P.2d 200. Moreover, the party opposing the motion, appellant, will be indulged to the extent of all inferences which may be reasonably drawn from the record. Equity Cooperative Ass'n v. Bechtold (1977), 173 Mont. 103, 566 P.2d 793.

Here, there is at least one blatant issue of fact: whether Hillard made a willful misrepresentation to appellant concerning the condition of the heating system.

Hillard, as respondent, argues that even if it can be shown that he made the misrepresentations, appellant cannot make a prima facie showing that he had the right to rely on the representations. In particular, respondent claims that the contract provision and appellant's opportunity to inspect the hotel preclude appellant's right to rely on Hillard's representations, however false. We disagree.

It is well established in this state that actual fraud is a question of fact. Section 28-2-404, MCA; Cowan v. Westland Realty Company (1973), 162 Mont. 379, 512 P.2d 714; Poulsen v. Treasure State Industries, Inc. (1981), ____ Mont. ____, 626 P.2d 822, 38 St.Rep. 218. Further, this Court has recognized the rule that "fraud vitiates every transaction and all contracts." Bails v. Gar (1976), 171 Mont. 342, 558 P.2d 458, 461. The reasoning behind this rule is that a party who has perpetrated fraud by inducing

another to enter into a contract may not then use the contract to immunize himself from the fraud. Bails, 558 P.2d at 461-462. The contract provision therefore does not preclude proof that a prior oral representation was made and relied upon.

Respondent contends that Schulz v. Peake (1978), 178 Mont. 261, 583 P.2d 425, should control our interpretation of the contract for sale. In Schulz, this Court construed a contract provision similar to the one in this case and stated that because the provision was unambiguous, the court's duty was to enforce it. Schulz is not controlling here for the simple reason that in Schulz a trial was had and findings of fact were made that no misrepresentations were made and no fraud committed. Here, appellant was not given the opportunity to show that misrepresentations were made and fraud committed.

Respondent cites Van Ettinger v. Pappin (1978), 180 Mont. 1, 588 P.2d 988, and Lowe v. Root (1975), 166 Mont. 150, 531 P.2d 674, to support his argument that because appellant inspected the premises he cannot, as a matter of law, be allowed the right to rely on a representation, whether true of false. In particular, respondent cites this often-quoted passage in Van Ettinger:

> "'When it appears that a party, who claims to have been deceived to his prejudice, has investigated for himself or that the means were at hand to ascertain the truth . . . of any representations made to him, his reliance upon such representations made to him, however false they may have been, affords no ground of complaint. (Grindrod v. Anglo-American Bond Co., 34 Mont. 169, 85 P. 891; Power & Brothers v. Turner, 37 Mont. 521, 97 P. 950; 26 C.J. 1149.)'" (Emphasis added.) 588 P.2d at 994, quoting Lee v. Stockmen's National Bank (1922), 63 Mont. 262, 284, 207 P. 623, 630.

Respondent has placed an unnecessarily harsh interpretation on the above passage. In *Van Ettinger* the party claiming fraud knew the falsity of the representation and therefore no evidence could be presented to show the right to rely on the representation. In *Lowe* a superficial inspection of the building would have revealed the open and notorious deficiencies in the building. That is simply not the case here.

Appellant acknowledges that upon his inspection he found two inches of water in the basement. Respondent claims that the presence of the water should have put appellant on inquiry that the boilers were defective. Appellant, indeed, was put on inquiry. According to his deposition, appellant asked Hillard why the water was there and Hillard replied that the boilers needed only minor repairs, allegedly misrepresenting the true condition of the boilers. Moreover, appellant may have been prevented from further access to the hotel in order to investigate Hillard's alleged misrepresentations. Appellant stated in his deposition that the manager of the hotel would not let him freely inspect the premises.

*Van Ettinger* and *Lowe* do not stand for the proposition that a buyer must assume a seller or his agent is lying when the buyer is told a plausible explanation for a defect and what is required to cure the defect. The Kansas Supreme Court has expressed the limitations that need to be placed on the *Van Ettinger* and *Lowe* cases:

> "'The trend of the decisions of the courts of this and other states is towards the just doctrine, that where a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied,

it is no defense, to an action for rescission
    or for damages arising out of the deceit,
that the party to whom the representations
were made might, with due diligence, have
discovered their falsity, and that he made no
searching inquiry into facts. . .'" Nordstrom
v. Miller (1980), 227 Kan. 59, 605 P.2d 545,
553, quoting Speed v. Hollingsworth (1894),
54 Kan. 436, 440, 38 P. 496, 497.

Opportunity to inspect in itself is no defense to possible willful misrepresentations that, because of their plausibility, preclude further investigation. See also, Shechter v. Brewer (Mo. 1961), 344 S.W.2d 784, and Lumby v. Doetch (1979), ___ Mont. ___, 600 P.2d 200, 36 St.Rep. 1684.

The District Court therefore erred by holding that appellant failed to make a prima facie showing that he had a right to rely on Hillard's alleged misrepresentations. Since the record reflects other genuine issues of material fact, such as, whether Hillard made fraudulent representations, whether appellant relied on those representations, and whether appellant had the opportunity to further investigate Hillard's alleged representations, the summary judgments are reversed. The cases are joined and remanded to the District Court.

_____
                Justice

We concur:


_____
_____
_____
    Justices

-8-

Mr. Justice John C. Sheehy dissenting:

I would affirm the District Court. Under the facts of this case, our prior decisions should require affirmance. See particularly Van Ettinger v. Pappin (1978), 180 Mont. 1, 588 P.2d 988; Lowe v. Root (1975), 166 Mont. 150, 531 P.2d 674; Lee v. Stockmen's National Bank (1922), 63 Mont. 262, 207 P. 523; and Grinrod v. Anglo-American Bond Co. (1906), 34 Mont. 169, 85 P. 891.

Here the buyer specifically contracted that the seller made no representations to him not contained in the written agreement. If that language affords no protection to a seller under these facts, we have provided a fertile breeding ground for lawsuits in all land sale contracts. There would be civic and social benefit if we required persons signing written contracts to say what they mean or mean what they say in the language used.

_____
                    Justice