No. 88-377

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

MONTANA BANK OF RED LODGE, N.A.,

        Plaintiff and Appellant,

-vs-

AILEEN LIGHTFIELD, a/k/a MARY AILEEN
LIGHTFIELD,

        Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Carbon,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bruce E. Lee, Billings, Montana

    For Respondent:

        W. Corbin Howard, Billings, Montana

Submitted on Briefs: Nov. 17, 1988

Decided: April 6, 1989

Filed:

Clerk

Mr. Justice William E. Hunt, Sr. delivered the Opinion of the Court.

The Montana Bank of Red Lodge, the plaintiff, appeals the decision by the District Court of the Thirteenth Judicial District, Carbon County, denying its two motions for judgment nothwithstanding the verdict, one regarding whether a partnership existed between defendant Aileen Lightfield and her son, Lee J. Lightfield, and the other regarding whether defendant Aileen Lightfield is liable for up to $40,000 of Lee J. Lightfield's debt because of her signature on a written guaranty form. The Bank also appeals the District Court's decision to order a new trial.

The defendant cross-appeals the decision by the District Court, denying her motion for judgment notwithstanding the verdict regarding whether she is liable for up to $40,000 of Lee J. Lightfield's debt as a result of her signature on a written guaranty form. We affirm the District Court.

The issues raised by the plaintiff on appeal are:

(1) whether the District Court erred in denying plaintiff's motion for judgment notwithstanding the verdict upon plaintiff's assertion that as a matter of law a partnership existed between defendant Aileen Lightfield and her son, Lee J. Lightfield, and therefore defendant is liable for debts incurred by Lee J. Lightfield, totalling $86,126.91 plus interest;

(2) whether the District Court erred in denying plaintiff's motion for judgment notwithstanding the verdict upon plaintiff's assertion that as a matter of law the defendant is liable for up to $40,000 as a result of her signature on a written guaranty form;

(3) whether the District Court erred in granting a new trial upon the motion of the defendant.

The issue raised on cross-appeal by the defendant is:

(1) whether the District Court erred in denying defendant's motion for judgment notwithstanding the verdict upon defendant's assertion that she is not liable for up to $40,000 as a result of her signature on a written guaranty form.

On March 25, 1982, Lee J. Lightfield established a line of credit for $40,000 with the Montana Bank of Red Lodge (Bank) to finance used automobiles for the purpose of reselling the automobiles at a car lot in Billings. Before allowing Lee to establish this line of credit, the Bank required that Lee's parents, Aileen and Gilbert Lightfield, pledge a $10,000 certificate of deposit by assignment and sign a guaranty form for up to $40,000 plus interest. Both Aileen and Gilbert Lightfield pledged the $10,000 certificate of deposit and signed the guaranty form.

On April 23, 1982, after Lee pledged a $20,000 certificate of deposit, the Bank increased Lee's line of credit to $80,000. On September 28, 1982 the Bank increased Lee's line of credit to $130,000. In neither case did the Bank inform Aileen Lightfield of the increase in Lee's line of credit.

Gilbert Lightfield was seriously ill throughout this time and subsequently died on May 9, 1983. Shortly after Gilbert Lightfield's death, Lee persuaded his mother, Aileen Lightfield, to enter the used car business. Aileen testified that she did not necessarily want to get into the car business, but she also did not want to be alone on the ranch. She testified that her son promised that he would get her an apartment near him in Billings, teach her to how to buy cars, and have her keep the books. Aileen consented to enter the

- 3 -

car business and went with Lee to the Bank on May 16, 1983, to see whether the Bank would give her a line of credit for the purpose of buying used automobiles. The Bank subsequently allowed Aileen to establish a line of credit in the amount of $150,000 for the purpose of buying used automobiles. Aileen mortgaged her ranch land, located in the Lambert area, as collateral.

In July, 1983, Aileen Lightfield realized that her son was not fulfilling his promise of teaching her about the car business and informed her son to sell all of her cars because she was getting out of the business. She informed the Bank of her decision on August 26, 1983. She arranged a November 10, 1983 meeting with the Bank. Aileen testified that at this meeting, as well as on the phone approximately a week earlier, she demanded from the Bank all of the documents that she had ever signed. After this demand, the Bank simply gave her a satisfaction of her mortgage on her ranch land at the November 10 meeting.

In November, 1983, the Bank became concerned when an inventory of the car lot in Billings showed a few cars of Lee Lightfield's missing. The Bank met with Lee on January 7, 1984 and eventually discovered that Lee was defrauding the Bank. Lee subsequently pled guilty to eighteen counts of theft.

In January, 1984, the Bank called Aileen Lightfield and asked her to come to the Bank to see if she could help Lee with his financial problems. When Aileen arrived at the Bank on January 16, 1984, the Bank asked her to sign a note promising to pay Lee's debt of $150,000. Aileen refused to sign the note.

The Bank filed a complaint on April 25, 1984, naming Lee J. Lightfield, Lee's wife (Sandy Lightfield), and Aileen Lightfield as defendants. Lee and Sandy Lightfield were

subsequently dismissed as defendants in this action when they filed for bankruptcy by way of a joint petition in the United States Bankruptcy Court, leaving Aileen Lightfield as the sole defendant. The case was brought to trial on September 21, 1987. Both the plaintiff Bank and defendant Aileen Lightfield filed motions for directed verdicts asking the court to determine if a partnership existed between defendant Lightfield and her son. The court granted Lightfield's motion, finding that as a matter of law no partnership existed between her and her son.

Both the Bank and Lightfield also brought motions for directed verdict regarding defendant Lightfield's liability as a result of the written guaranty form. The District Court denied both of these motions and allowed the question to go to the jury. On September 24, 1987, the jury, by special verdict, found defendant Lightfield liable to the Bank by reason of the guaranty, but only awarded the Bank $1.00 in compensatory damages. The jury also found that the Bank breached a duty of good faith and fair dealing toward Aileen Lightfield, but found that the breach did not cause her injury or damage. The jury then found that the Bank did not commit actual or constructive fraud by reason of its conduct toward defendant Lightfield. The jury awarded Lightfield $1,500 in compensatory damages. The jury found that the Bank had not acted with fraud, malice or oppression in its relationship with Lightfield and therefore did not reach the question of whether to assess the Bank with punitive damages.

The District Court denied the Bank's motion for judgment notwithstanding the verdict regarding the existence of a partnership and denied both the Bank's and Lightfield's motions for judgment notwithstanding the verdict regarding Lightfield's liability as a result of the written guaranty form. On March 25, 1988, the District Court granted

Lightfield's motion for a new trial, finding that under § 25-11-102, MCA, the jury's findings were inconsistent.

The first issue raised on appeal is whether the District Court erred in denying the Bank's motion for judgment notwithstanding the verdict upon the Bank's assertion that as a matter of law a partnership existed between Aileen Lightfield and her son, Lee J. Lightfield, and therefore Aileen Lightfield is liable for debts incurred by Lee J. Lightfield, totalling $86,126.91 plus interest.

Section 35-10-201, MCA, defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." This Court has consistently held that in determining whether a partnership exists, it is necessary that the parties clearly manifest their intent to associate themselves in a partnership relationship; that each partner contributes something that promotes the enterprise; that each partner has a right of mutual control over the subject matter of the enterprise; and that the partners have agreed to share profits. Bender v. Bender (1965), 144 Mont. 470, 480, 397 P.2d 957, 962. When ascertaining the intent of the parties absent a written agreement, all the surrounding facts, circumstances, and conduct of the parties must be considered. Bender, 144 Mont. at 480, 397 P.2d at 962. Section 35-10-202, MCA, also lists rules that are important in determining whether a partnership exists.

The Bank argues that the agreement between Lee and Aileen was to share profits and that under § 35-10-202(4), MCA, the sharing of business profits is prima facie evidence that a person is a partner in the business. However, § 35-10-202(4), MCA, also states that no such inference shall be drawn if such profits were received in payment as wages for an employee or as a debt by installments. Section 35-10-202(4)(a) and (b), MCA. The facts in this case are

uncontroverted. The understanding between Aileen and Lee provided for an unequal splitting of the profits between Lee and Aileen from Aileen's line of automobiles only. Neither profits nor losses were shared between Lee and Aileen from Lee's line of automobiles. The understanding also provided that Lee would absorb all the losses. The understanding, however, also included that Lee would teach Aileen the art of buying used automobiles, get her an apartment in Billings, and have her keep the books. Lee never fulfilled this part of the agreement and therefore after less than two months, Aileen made her intentions known to Lee that she was getting out of the used car business. In light of all the surrounding facts and circumstances, this understanding between Lee and Aileen is more consistent with Aileen paying Lee to instruct her in the business of buying used automobiles rather than an agreement among partners to share profits.

The evidence also clearly establishes that Aileen had no control over the subject matter of the supposed partnership. Lee took total control of the buying and selling of the automobiles financed on Aileen's line of credit. Aileen had no control over her automobiles nor over automobiles financed from Lee's line of credit. Lee also never allowed Aileen to keep the books. No written partnership agreement existed between Lee and Aileen Lightfield and neither Lee nor Aileen intended to be partners nor did the Bank consider them or treat them as partners until the deficiency arose. All parties, including the Bank, understood Lee's and Aileen's lines of credit to be separate and the lines in fact were kept separate.

The record also establishes that the insurance policy for both Lee's and Aileen's automobiles was in the sole name of Lee J. Lightfield; that Lee and Aileen, as well as other

third parties, operated under the name of a car lot, Central Auto, which was owned by a third party; that both Lee and Aileen operated under the same business license and bond; and, that the two shared one bank account for all their business transactions. As stated previously, however, the entire surrounding facts, circumstances, and conduct of the parties must be considered when determining whether the requisite intent exists to create a partnership in the absence of an express agreement. This Court has never held--contrary to what the Bank argues--that intent is not required in the formation of a partnership. To the contrary, intent is a major factor. Truck Ins. Exchange v. Industrial Indemnity Co. (1984), 212 Mont. 297, 300, 688 P.2d 1243, 1244; Bender, 144 Mont. at 480, 397 P.2d at 962.

The burden of proving the existence of a partnership is on the party seeking to establish its existence. Bender, 144 Mont. at 480, 397 P.2d at 962. In light of all of the evidence, we hold that the Bank failed to establish the requisite factors necesary to prove the existence of a partnership and therefore hold that the District Court properly found that no partnership existed between Aileen and Lee as a matter of law.

The second issue raised on appeal and the issue raised on cross-appeal is whether the District Court erred in denying the Bank's and Lightfield's motions for judgment notwithstanding the verdict regarding whether Lightfield is liable for up to $40,000 as a result of her signature on a written guaranty form.

The Bank argues that the guaranty should be enforced on its face and that none of the affirmative defenses set forth by Lightfield should have gone to the jury. Lightfield argues that as a matter of law she should be exonerated because the Bank failed to inform her of facts substantially

increasing her risk of loss and because her obligation under the guaranty was procured by either fraud or constructive fraud. We hold that the District Court did not err by allowing the issues to go to the jury and in denying the Bank's motions for directed verdict regarding Lightfield's affirmative defenses.

The Bank argues that Lightfield's allegation of fraud fails because an essential element--the aggrieved party's reliance upon the other party's representation--is not present. Conversely, Lightfield argues that the evidence indicates that all the elements constituting fraud were satisfied and therefore the District Court erred in not granting her motion for judgment notwithstanding the verdict. We disagree with both the Bank's and Lightfield's assertions.

Typically, a person who fails to take the opportunity to examine a written form before executing it cannot claim fraud. Jenkins v. Hillard (1982), 199 Mont. 1, 6, 647 P.2d 354, 357; Hjermstad v. Barkuloo (1954), 128 Mont. 88, 98, 270 P.2d 1112, 1117. As noted by the Bank, however, a person may claim fraud to a document he signs "where he is prevented from reading it or having it read to him by some fraud, trick, artifice, or devise by the other party." 17 Am.Jur.2d Contracts § 152 (1964).

Actual fraud is always a question of fact. Jenkins, 199 Mont. at 5, 647 P.2d at 357. This Court is not in a position to weigh the facts. This Court's function is to determine whether the District Court erred when denying the Bank's motion for directed verdict. Motions for directed verdict or for judgments notwithstanding the verdict are proper only when no evidence exists to warrant submission to the jury. McGregor v. Mommer (Mont. 1986), 714 P.2d 536, 540, 43 St.Rep. 206, 210; Wilkerson v. School Dist. No. 15 (Mont. 1985), 700 P.2d 617, 622, 42 St.Rep. 745, 750-51. We

therefore hold that the District Court properly denied the Bank's motion for directed verdict on the basis of either fraud or constructive fraud. Likewise, we uphold the court's order denying Lightfield's motion for judgment notwithstanding the verdict on these issues.

The Bank also argues that under the written guaranty form they were not required to give Lightfield advance notice that they were increasing Lee J. Lightfield's line of credit. In Bails v. Gar (1976), 171 Mont. 342, 558 P.2d 458, we held that "[f]raud vitiates every transaction and all contracts." Bails, 171 Mont. at 347, 558 P.2d at 461 (quoting 37 Am.Jur.2d Fraud and Deceit § 8 (1968)). A person who perpetuates fraud by inducing another to enter a contract may not then immunize himself by relying upon the provisions within the contract. Jenkins, 199 Mont. at 6, 647 P.2d at 357. In light of the above discussion addressing fraud, we cannot determine as a matter of law whether Lightfield had notice of the specifications under the written guaranty form and whether the Bank needed to inform her of facts which substantially increased her risk of loss. These are questions for the jury to decide. As previously noted, motions for directed verdict or for judgment notwithstanding the verdict are proper only when no evidence exists to warrant submission to the jury. McGregor, 714 P.2d at 540, 43 St.Rep. at 210; Wilkerson, 700 P.2d at 622, 42 St.Rep. at 750-51. We therefore hold that the District Court properly denied the Bank's motion for directed verdict and Lightfield's motion for judgment notwithstanding the verdict on this issue.

The third issue raised on appeal is whether the District Court erred in granting a new trial upon the motion of the Bank.

The District Court granted Lightfield's motion for a new trial on March 25, 1988. The court found that the verdict form was straightforward and understandable, but after reviewing the jury's responses, the court was left with the inescapable impression that the jury was "either hopelessly confused or disregarded the court's instructions." We agree that the jury was confused but further determine that the form itself was terribly confusing and should not be used again.

The requirements for requesting and ordering a new trial are set forth in Rule 59, M.R.Civ.P. A verdict may be vacated and a new trial granted on the application of an aggrieved party if the District Court finds that insufficient evidence exists to justify the verdict or that it is against the law. Section 25-11-102(6), MCA. In ordering the new trial, the District Court found that the jury had determined that Lightfield was liable to the Bank on the guaranty she had signed. The court noted that the guaranty was for up to $40,000, yet the jury awarded the Bank compensatory damages of only $1.00. The court also found that the jury had determined that the Bank had breached its duty of good faith and fair dealing in its actions toward Lightfield, but then found that Lightfield had not been injured or damaged as a result. The court noted, however, that the jury nonetheless awarded Lightfield $1,500 in compensatory damages. The court also noted that despite its instructions, the jury failed to account for Lightfield's $10,000 certificate of deposit which the Bank retained. The court concluded that the jury findings were inconsistent and that it was too difficult to speculate as to how the jury arrived at its conclusions. The court therefore ordered a new trial pursuant to § 25-11-102(6), MCA.

The District Court possesses the discretion to either grant or deny a motion for a new trial. This Court will not overturn a decision by the District Court absent a showing of manifest abuse of that discretion. Walter v. Evans Products Co. (1983), 207 Mont. 26, 30-31, 672 P.2d 613, 616. In light of the above, we hold that the District Court did not abuse its discretion by granting Lightfield's motion for a new trial. We therefore affirm the District Court on this issue.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

- 12 -

Mr. Justice Fred J. Weber specially concurs as follows:

I concur in the granting of a new trial. However, I dissent to the portion of the majority opinion which affirms the District Court's granting of a directed verdict on the partnership issue.

Both parties in this action moved for a directed verdict, asking the court to determine as a matter of law whether a partnership existed. The lower court granted Ms. Lightfield's motion, determining as a matter of law, that no partnership existed. This Court has examined the facts and affirmed this holding.

The standard for granting a directed verdict is well-settled and was recently reiterated in Britton v. Farmers Ins. Group (1986), 721 P.2d 303, 317, 43 St.Rep. 641, 656, as follows:

> A motion for directed verdict is properly granted only in the complete absence of any evidence to warrant submission to the jury, and all inferences of fact must be considered in the light most favorable to the opposing party. Jacques v. Montana National Guard (1982), 199 Mont. 493, 649 P.2d 1319; if the evidence viewed in a light most favorable to plaintiff indicates reasonable men could differ as to the conclusions drawn from the evidence a directed verdict is not proper. Weber v. Blue Cross of Montana (1982), 196 Mont. 454, 643 P.2d 198.

In the present case the majority opinion states facts sufficient to demonstrate that reasonable men might differ as to whether a partnership existed. This was properly a jury issue. The District Court analyzed and weighed the evidence. This is inappropriate on a motion for a directed verdict, even when both parties have requested a directed verdict.

13

Borgmann v. Diehl (1970), 155 Mont. 458, 462-63, 473 P.2d 529, 531.

The majority opinion, in affirming the directed verdict, has also engaged in weighing the evidence. While it is possible that a jury would conclude that no partnership existed, it is not our function to make that determination where reasonable men could reach a different conclusion. An inappropriate standard has been used both by the District Court, and by this Court on appeal. I would vacate the directed verdict and remand for a jury trial on the partnership issue also.

_____
Justice

14